Fred S. MOTT, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 3–785A173.

Court of Appeals of Indiana,
Third District.

March 19, 1986.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Defendant-appellant Fred Mott appeals from an order setting pre-trial release bail in the amount of $40,000.00 to be executed only with sureties. Appellant alleges:

(1) the amount is excessive;

(2) the trial court abused its discretion in requiring the posting of a surety bond rather than a 10% cash deposit;

(3) the application of Elkhart County Local Court Rule 10 impinged his constitutional rights to bail and denied him due process and equal protection;

(4) consideration of the possible penalty for the crime charged in determining amount of bail denies the accused the right to the presumption of innocence; and

(5) the trial court erred in considering erroneous information contained in a pre-trial release report in determining the amount of bail.

Mott was charged in 1978 with rape while armed with a deadly weapon, a Class A felony, and unlawful deviate conduct, a Class B felony. Mott pled guilty to both charges and was sentenced to 30 years on the rape count and 20 years on the deviate conduct count, the sentences to run consecutively. In 1984, Mott's petition for post-conviction relief was granted and the guilty pleas were set aside. Mott was then arraigned on the same charges and bail was set at $50,000.00. Pursuant to a motion to reduce bail and a subsequent hearing, Mott's bail was reduced to $40,000.00. Mott appeals that ruling.

Appellant's arguments are premised on his allegation that bail in the amount of $40,000.00 is excessive. The right to bail is set forth in the Constitution of Indiana, Art. 1, § 17:

"Right to bail and unbailable offenses
Section 17. Offenses, other than murder or treason, shall be bailable by sufficient sureties. Murder or treason shall not be bailable, when the proof is evident, or the presumption strong."

Excessive bail is prohibited in Art. 1, § 16:

"Excessive bail or fines and cruel or unusual punishment
Section 16. Excessive bail shall not be required. Excessive fines shall not be imposed. Cruel and unusual punishments shall not be inflicted. All penalties shall be proportioned to the nature of the offense."

Implementing these constitutional provisions, the legislature has provided a list of relevant factors to consider in determining the amount of bail. IND. CODE § 35–33–8–4(b) provides:

"(b) Bail may not be set higher than that amount reasonably required to assure the defendant's appearance in court. In setting and accepting an amount of bail, the judicial officer shall take into account all facts relevant to the risk of nonappearance, including:

(1) the length and character of the defendant's residence in the community;

(2) the defendant's employment status and history and his ability to give bail;

(3) the defendant's family ties and relationships;

(4) the defendant's character, reputation, habits, and mental condition;

(5) the defendant's criminal or juvenile record, insofar as it demonstrates instability and a disdain for the court's authority to bring him to trial;

(6) the defendant's previous record in not responding to court appearances when required or with respect to flight to avoid criminal prosecution;

(7) the nature and gravity of the offense and the potential penalty faced, insofar as these factors are relevant to the risk of nonappearance;

(8) the source of funds or property to be used to post bail or to pay a premium, insofar as it affects the risk of nonappearance; and

(9) any other factors, including any evidence of instability and a disdain for authority, which might indicate that the defendant might not recognize and adhere to the authority of the court to bring him to trial."

Interpreting this statute, the courts have found the amount of bail to be within the discretion of the trial court. *Holland v. Harger* (1980), 274 Ind. 156, 409 N.E.2d 604; *Shanholt v. State* (1983), Ind.App., 448 N.E.2d 308, *trans. denied.* The amount is to be determined by consideration of the circumstances of each case, *Green v. Petit, Sheriff* (1944), 222 Ind. 467, 54 N.E.2d 281, and is to be set only in an amount necessary to assure the presence of the accused at an appropriate time and his submission to the authority of that court. *Hobbs v. Lindsey, Sheriff, etc.* (1959), 240 Ind. 74, 162 N.E.2d 85. The reviewing court will reverse only for an abuse of discretion by the trial court. *Green v. Petit, supra.*

■ Relevant to reviewing the amount of bail set in this case is the fact $40,000.00 is the standard minimum for a Class A and a Class B felony in Elkhart County. Elkhart County Local Court Rule 10 provides:

"RULE 10

CRIMINAL BAIL SCHEDULE

A. Standard minimum bail set in criminal cases shall be as follows:

| Felony Classification | Suspendible Sentence | Non-Suspendible Sentence |
|---|---|---|
| A | $20,000.00 | $25,000.00 |
| B | $10,000.00 | $15,000.00 |
| C | $ 5,000.00 | $10,000.00 |
| D | $ 3,000.00 | $ 5,000.00 |

B. The Court may fix a higher or lower bail upon the showing of appropriate circumstances. All bail fixed pursuant to this schedule shall be reviewable upon motion of any party.

C. Any person charged with Class C or Class D felonies who are found by the Pretrial Release Officer (1) to have close ties to the community, (2) not to have been previously convicted of an offense, (3) to be liable for a sentence which is not non-suspendible, and (4) to be charged with an offense not involving a deadly weapon, shall be entitled to immediate release upon posting a 10% cash bond with the Clerk of the Court."

Such a schedule can be presumed to set a reasonable amount to assure the presence in court of the accused. *Hobbs v. Lindsey, supra.* However, such a schedule must also be flexible in that if bail is fixed in an amount higher than that usually required

for serious crimes, a hearing must be provided in which evidence of the reason for the higher amount is presented. The flexibility in amount and/or a hearing to justify the amount is necessary to preserve the constitutional rights of the accused. *Stack v. Boyle* (1951) 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3. Such flexibility and protection of the rights of the accused was demonstrated in this case where the amount of bail was initially set at $50,000.00, $10,000.00 above the minimum, and the petitioner was then afforded a hearing after which the bail was reduced to $40,000.00, the scheduled minimum.

The evidence of the factors enunciated in IND. CODE § 35–33–8–4(b) as applicable to Mott's situation was garnered through hearing testimony, affidavits submitted with the motion to reduce the $50,-000.00 bail and a pre-trial release report. Mott was shown to be an indigent. Mott's mother, sister and cousin each testified to a willingness to help Mott raise the funds for bail but indicated a lack of funds readily available for such an undertaking. However, the inability to procure the amount necessary to make bond does not in and of itself render the amount unreasonable. *Anderson v. State* (1979), 181 Ind.App. 628, 393 N.E.2d 238, *reh. denied, trans. denied.*

Mott was also shown to have lived in the community for approximately seven months prior to his arrest. During that time he lived with a cousin who indicated he could return to her home if released. Mott's mother indicated Mott had several relatives living within the community for substantial periods of time. While she had lived in the community for two or three years and Mott's sister had lived in the community four years, Mott was incarcerated during those years. Thus Mott's personal time within the community was limited and any personal ties to the community were not demonstrated except for the presence of extended family.

Finally, Mott indicated gainful employment within the community prior to arrest. Mott's cousin testified she had arranged employment for Mott on his release. However this employment was limited consisting of ten hours per week for a period of approximately two months and intermittent hours for the subsequent three or four months. While Mott does have a Bachelor of Science degree in human resources, no further employment prospects were shown to exist.

This evidence does not come near showing the strong community and family ties demonstrated in *Sherelis v. State* (1983), Ind.App., 452 N.E.2d 411, on which appellant relies. Sherelis had resided in the community for 12½ years; resided in his home with his wife and teenaged daughter for 6½ years; had been married 25 years and had two other daughters in college in Indiana; and had numerous financial ties to the community by way of debts and assets. Under such circumstances, bail in the amount of $1,000,000.00 was found to be excessive and an abuse of discretion. Even though the charges were severe, four counts of Class A and one Count of Class B felonies, the amount was more than that required to assure the presence of the accused when considering these substantial ties to the community. Such ties assuring presence simply were not demonstrated for Mott who had lived in Illinois most of his life.

In addition, in *Sherelis* the accused had no prior criminal record. Mott has an extensive juvenile and criminal record. The pre-trial release report indicates seven to ten juvenile arrests for burglary, theft, gambling and curfew violations; and escape from boys' camp by overpowering a guard; and a rape conviction with a sentence of seventeen months in an industrial school. The report indicated an adult criminal record which included an arrest and conviction for attempted rape culminating in a 3–12 year sentence and the imposition of an additional 2–6 years for a forcible rape while on work release. Mott was given statutory parole which was to continue into 1983 and permitted in January 1978 to travel to Elkhart to look for work. The permit to travel was extended and Mott was arrested and fined for public intoxi-

cation in June 1978 and arrested again in July 1978 for the instant crimes which are of a very serious nature subjecting Mott to a potential penalty of 50 years non-suspendible.

■ Considering these factors, the trial court did not abuse its discretion in setting bail at $40,000.00. Where the amount is considered on its merits and set in accordance with bail schedule, it is not excessive. *Williams v. State* (1981), 275 Ind. 434, 417 N.E.2d 328.

■ Appellant contends that the trial court abused its discretion by requiring the posting of bail in the form of a surety bond rather than a 10% cash deposit. IND. CODE § 35–33–8–3 provides the options available to the trial judge in order to let the accused to bail and still assure his appearance in court:

"Conditions to assure appearance

Sec. 3. The court may admit the defendant to bail, and impose any of the following conditions to assure the defendant's appearance at any stage of the legal proceedings:

(1) Require the defendant to execute a bail bond with sufficient solvent sureties or to deposit cash or securities in an amount equal to the bail, or to execute a bond secured by real estate in the county, where the true cash value (as determined by IC 6–1.1–1–3) less encumbrances is at least equal to the amount of the bail.

(2) Require the defendant to execute a bail bond by depositing cash or securities with the county clerk in an amount not less than ten percent (10%) of the bail. A portion of this deposit, not to exceed ten percent (10%) of the monetary value of the deposit or fifty dollars ($50), whichever is the lesser amount, may be retained as an administrative fee. A defendant admitted to bail under this subdivision must be notified by the court or clerk that his deposit may be forfeited under section 7 of this chapter.

(3) Impose reasonable restrictions on the activities, movements, associations, and residence of the defendant during the period of release.

(4) Place the defendant under the reasonable supervision of a probation officer or other appropriate public official.

(5) Release the defendant into the care of some qualified person or organization responsible for supervising the defendant and assisting him in appearing in court. The supervisor shall maintain reasonable contact with the defendant in order to assist him in making arrangements to appear in court and, where appropriate, shall accompany him to court. The supervisor need not be financially responsible for the defendant.

(6) Release the defendant on his personal recognizance where the defendant shows little risk of nonappearance.

(7) Impose any other reasonable restrictions designed to assure the defendant's presence in court."

Although no reference has been made to nor have we found a case interpreting this statute, as with IND. CODE § 35–33–8–4(b) committing the amount of bail to the discretion of the trial judge, this statute also places the manner of executing the bail within the discretion of the trial judge. Since the objective in requiring a particular manner of execution is also to assure the appearance of the accused, the same factors would be relevant as are relevant to determining amount of bail. In the present case, considering the factors discussed above, there was no showing an abuse of discretion in requiring a surety bond rather than a cash deposit. In fact, there was no showing in this case of the specific requirements for the execution of the surety bond and its effect on the accused is therefore impossible of determination.

■ Appellant further argues that Elkhart County Rule 10, subsection C, *supra*, violates his constitutional rights in that it denies the posting of a 10% cash bond to those charged with Class A and Class B felonies. However, the rule does not prohibit the cash bond to a particular

class. The rule creates a mandatory release on the posting of 10% cash for those accused of Class C and D felonies and within the purview of subsections (1) through (4). Otherwise the provisions of IND. CODE § 35–33–8–3, *supra*, would apply. Considered together, the rule and the statute allow those charged with Class A or B felonies or Class C or D felonies and not within the purview of subsection (1) through (4) of Rule 10, to bail with a posting of 10% cash bond at the discretion of the trial court considering what is reasonably calculated to assure the presence of the accused. Therefore Rule 10 does not violate the rights of the accused as it does not prohibit consideration of a 10% cash bond on Class A and B felony charges, it simply puts the determination on a different basis. Differences in classification of cases for purposes of bail are not prohibited. *Carlson v. Landon* (1952) 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547. *See, Gregory v. State ex rel. Gudgel* (1884), 94 Ind. 384 (no general sum can be fixed for all cases). Rule 10 does not violate the rights of the accused.

 Appellant urges that consideration of the potential penalty as a factor in determining amount of bail violates the intent of the Indiana Constitution and denies the presumption of innocence. Consideration of the possible penalty the accused faces is established through legislation, IND. CODE § 35–33–8–4(b)(7), and case law. The leading Indiana case on factors for consideration, including possible penalty, is *Gregory v. State ex rel. Gudgel, supra*, decided in 1884. In addition, possible penalty has been listed as a factor of consideration in determining bail pursuant to federal laws and rights. *Stack v. Boyle, supra.* The consideration does not impinge the presumption of innocence as that presumption is interrelated to and preserved by the right to freedom of bail pending trial. *Stack v. Boyle, supra*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3; *Hobbs v. Lindsey, supra*, 240 Ind. 74, 162 N.E.2d 85; *Sherelis v. State, supra*, Ind.App., 452 N.E.2d 411. Possible penalty is only one factor in determining the amount and conditions of that

bail, and such consideration does not impinge the rights of the accused.

 Finally, appellant contends the trial court erroneously relied on faulty information in determining amount of bail in that the pre-trial release report contained erroneous information. The appellant failed to object to the contents of the report at the hearing even though it was indicated the opportunity to review the report was afforded the accused. A timely objection not being made at trial, the issue is waived. *Sherelis v. State, supra*, (State failed to object to defendant's affidavit at the hearing and therefore waived any issue pertaining to same).

No error having been found, the trial court decision is affirmed.

Affirmed.

STATON, P.J., and GARRARD, J., concur.