ESTATE OF Cloyd A. PAYNE By David M. PAYNE, Personal Representative On Behalf Of Said Estate And All Others Similarly Situated, Appellants (Plaintiffs),

v.

GRANT COUNTY COURT, John P. Porter As Judge Of Said Court; Grant County; and Linley E. Pearson As Attorney General Of The State of Indiana; Appellees (Defendants).

No. 27A02–8609–CV–317.

Court of Appeals of Indiana, Second District.

June 15, 1987.

David M. Payne, Marion, for appellants.

Warren Haas, Marion, for appellees.

BUCHANAN, Judge.

### CASE SUMMARY

This appeal arises from a class action brought by plaintiffs-appellants the Estate of Cloyd A. Payne, by David M. Payne, personal representative on behalf of the Estate and all others similarly situated [hereinafter collectively referred to as the Fee Payers], who now appeal the trial court's judgment in favor of defendants-appellees Grant County Court, John P. Porter as Judge of Grant County Court, Grant County, Linley E. Pearson as Attorney General of the State of Indiana [hereinafter collectively referred to as Porter] in the Fee Payers's suit to recover administrative fees retained by the Grant County Court when the Fee Payers posted *cash bail bonds*. The Fee Payers claim they were denied the opportunity to post *full cash bail*, and that the charging of an administrative fee pursuant to Ind.Code 35–33–8–3(2) (1986) and the court's order is unconstitutional.

We affirm.

### FACTS

In this opinion we refer to the procedure in which 10% of the amount of bail is posted by an accused in cash, and 1% of the total bail is retained by the court as an administrative fee upon conclusion of the case, as a *cash bail bond*. The posting of the entire amount of bail in cash is referred to as *full cash bail*.

On October 29, 1981, the Grant County Court established a bail schedule which described the amount of bail required for certain classes of offenses. For example, for a class A misdemeanor, the bail schedule provided that a surety bail bond of $3,000 or a cash bail bond of $300 would be accepted by the court. The bail schedule further provided that the accused could "make personal application for a change of Bail type or for a reduction in Bail to the regular presiding Judge." *Record* at 50. A general order promulgated by the court on the same day which described the cash bail bond procedure provided that a person could satisfy bail by providing 10% of the amount specified in the general order as bail, and that the court would return 90% of the deposited sum at the conclusion of the action and would retain 10% of the amount deposited (or 1% of the entire bail amount) to cover administrative costs. If the accused posted the surety bond, no administrative fee was charged.

Cloyd A. Payne (Payne) was arrested for driving while intoxicated, and then released after posting a cash bail bond of $300 (bond set at $3,000). Payne and his surety signed an acknowledgment as to their liability for the $300, and authorized the court to retain the lesser of 10% of that amount or $50 as an administrative fee. No reason is indicated as to why a surety also signed the acknowledgment. Subsequently, Payne pled guilty to reckless driving. The amount of the cash bail bond was returned to Payne, minus a $30 administrative fee retained by the court.

This Court previously decided that Payne was entitled by IC 34–1–66–1 (1982) to post full cash bail. *Estate of Payne v. Grant County Court* (1984), Ind.App., 470 N.E.2d 785, *trans. denied.* We reversed a finding of summary judgment in favor of Porter, so that the trial court could determine whether Payne was afforded an opportuni-

ty to post full cash bail. *Id.* After remand, the trial court certified this suit as a class action.

On February 24, 1986, the cause was submitted to the trial court on stipulated facts. The relevant, summarized, stipulated facts reveal that the parties agreed that the Fee Payers were not orally advised by the trial court of their right to post full cash bail, but were informed that the administrative fee would be charged in the case of a cash bail bond regardless of the ultimate finding as to their guilt or innocence. Significantly, the parties stipulated that none of the Fee Payers ever requested to post full cash bail. It was also agreed that the amount of time and expense involved in processing cash bail bonds was the same regardless of the amount of the bond.

The trial court entered a memorandum decision on July 30, 1986, finding that the Fee Payers were not denied the right to post full cash bail. The Fee Payers now appeal.

The Fee Payers have adequately raised one general issue, which we restate as two:

1. Were the Fee Payers denied the right to post full cash bail?

2. Did the assessment of the 10% administrative fee violate the Fee Payers's constitutional rights?

■ The Fee Payers's argument that the administrative fee practice contravenes the purpose of the bail statute (IC 35–33–8–3) is waived. It is merely a statement of disagreement with that statute and contains no cogent argument or citation of authority, contrary to Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). Conclusory, bald assertions of error are not enough. *Douglas v. State* (1986), Ind., 490 N.E.2d 270; *Hensley v. State* (1986), Ind., 489 N.E.2d 62; *Captain & Co. v. Stenberg* (1987), Ind.App., 505 N.E.2d 88.

## DECISION

ISSUE ONE—Were the Fee Payers denied the right to post full cash bail?

PARTIES' CONTENTIONS—The Fee Payers assert that they were denied their right

to post full cash bail due to the Grant County Court's practice in following the general order and bail schedule and its failure to orally inform them of their right.

Porter responds that the Fee Payers failed to request the option to post full cash bail, and that there was no evidence that the opportunity to do so was denied. CONCLUSION—The Fee Payers were not denied the right to post full cash bail.

■ When stipulated facts are presented to the court for resolution, no presumption in favor of the trial court exists on appeal inasmuch as this court is in as good a position as the trial court to apply the facts to the determination. *Citizens Gas & Coke Util. v. American Economy Ins. Co.* (1985), Ind., 486 N.E.2d 998.

Porter had the authority to promulgate the general order and the bail schedule specifying various types of bail available because IC 35–33–8–3 places within the discretion of the trial judge the manner of executing bail. *Mott v. State* (1986), Ind. App., 490 N.E.2d 1125. The Grant County Court's bail schedule specified the amounts required for posting a surety bail bond and a cash bail bond, without specifically mentioning full cash bail as an available alternative. The order provided, however, that "the Court will accept either type of Bail. . . . The *accused may* in person or by counsel, *make personal application for a change of Bail type* or for a reduction in Bail to the regular presiding Judge." *Record* at 161 (emphasis added). The court's general order stated that "any person for whom bail has been set *may* satisfy the bail by executing bail in the amount of ten (10%) per cent of the amount established by General Order of the Court as surety bail for the offense(s)." *Record* at 163 (emphasis added).

■ Although neither document specified that the accused could post full cash bail, the orders in no way denied the accused that opportunity. Somewhat ambiguously, the bail schedule merely suggested two viable alternatives to posting bail, but did not preclude any other statutorily recognized bail options. *See* IC 35–33–8–3; IC

34-1-66-1. However, the parties stipulated that, "[n]o member of the class of plaintiffs requested to post [full cash] BAIL[1]." *Record* at 159. There is simply no showing that the court denied the Fee Payers the right to post full cash bail.

ISSUE TWO—Did the assessment of the 10% administrative fee pursuant to the court's general order and IC 35–33–8–3(2)[2] violate the Fee Payers's constitutional rights?

PARTIES' CONTENTIONS—The Fee Payers challenge the constitutionality of the administrative fee assessed by the Grant County Court, claiming the assessment is a denial of due process, an unlawful taking without just compensation, without rational basis, a denial of their right to bail, and a contravention of their right to liberty.

Porter denies any violation of the Fee Payers's constitutional rights.

CONCLUSION—The assessment of the administrative fee pursuant to Grant County Court's general order and IC 35–33–8–3(2) is not unconstitutional.

Every statute is presumed constitutional, thus, the Fee Payers must provide sufficient evidence to clearly overcome the presumption. *See American Nat'l Bank v. Indiana Dep't of Highways* (1982), Ind., 439 N.E.2d 1129; *State v. Monticello Developers, Inc.* (1987), Ind.App., 502 N.E.2d 927.

■ The court can properly charge an administrative fee when an accused posts cash bail bond. The United States Supreme Court in *Schlib v. Kuebel* (1971), 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502, firmly established that a 1% administrative fee such as that charged in the present case is *not* a cost of prosecution,[3] but rather an administrative cost imposed on *all* accused who take advantage of the benefits of a cash bail bond provision instead of using the services of a bail bondsman. On the basis that the 1% fee is an administrative fee which all accused must satisfy, we reject the Fee Payers's due process argument that the fee was unconstitutional because imposed without regard to the guilt or the innocence of an accused. This court followed this precedent in *Board of County Comm'rs v. Farris* (1976), 168 Ind.App. 309, 342 N.E.2d 642, *trans. denied.*

■ Closely connected to this discussion is the Fee Payers's assertion of a violation of their right to just compensation for an unlawful taking of property. As we have indicated the amount retained by the court was an administrative fee paid by the accused to the county clerk to cover the costs of handling bail bonds and related paper work, there is no unlawful taking of the property of the Fee Payers to which they are entitled to compensation. Rather, the Fee Payers voluntarily parted with 10% of the amount they deposited in exchange for the benefits received from not having to deal with a bail bondsman and thereby forfeiting, in all likelihood, the full 10% of the bail amount. *Cf. State v. Bailey* (1980), Ind.App., 405 N.E.2d 38 (order requiring estate to refund inheritance tax was not an unconstitutional taking of property by the State when estate voluntarily chose to pay the tax instead of offering security to cover the tax while the validity of the tax was litigated).

1. The parties used the term "BAIL" in the stipulated facts to describe "the full amount required to be paid in order to be released from custody, without the imposition of an administrative fee," i.e., full cash bail. *Record* at 158.

2. IC 35–33–8–3 states:
"The court may admit the defendant to bail and impose any of the following conditions to assure the defendant's appearance at any stage of the legal proceedings:
. . . .
(2) Require the defendant to execute a bail bond by depositing cash or securities with the county clerk in an amount not less than ten percent (10%) of the bail. A portion of this deposit, not to exceed ten percent (10%) of the monetary value of the deposit or fifty dollars ($50), whichever is the lesser amount, may be retained as an administrative fee...."

3. The Fee Payers cite *Giaccio v. Pennsylvania* (1966), 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447, to support their due process argument. However, the Court in *Schlib* readily distinguished *Giaccio* as a case involving costs of prosecution, and the vagueness and absence of standards in an "ancient Pennsylvania statute." *Schlib, supra,* 404 U.S. at 370, 92 S.Ct. at 487.

Thus, having determined that it is not unconstitutional to have the administrative fee included in the court's order and in IC 35–33–8–3, we next turn to the Fee Payers's argument as to the manner in which the fee is charged.

The Fee Payers, in what appears to be a two-tiered argument, allege the fee is without rational basis because the amount of the fee varies based on the type of the offense and correlating amount of bail imposed by the schedule, and because an accused posting full cash bail is not required to pay the administrative fee.

█ The decision by our legislature to impose a 10% fee as opposed to a fixed amount when an accused chooses to post a cash bail bond is not without a rational basis. The Fee Payers would have the amount of the fee, if any, fixed regardless of the charged offense, instead of imposed in terms of percentage. The legislature provided that 10% of the deposited amount *or* $50, whichever is lesser, may be retained by the county clerk. IC 35–33–8–3(2). In essence, there is a fixed amount, as a ceiling is set at $50, with those accused of lesser offenses receiving the benefit of a lesser administrative fee. Furthermore, the use of a percentage, as opposed to a flat amount, may be explained by recognizing that more responsibility is incurred when a higher bail is set. In response to a similar argument alleging no rational basis made in the *Schlib* controversy, the Illinois Supreme Court answered:

"Historically many fees and charges for the services of court officers have been fixed in proportion to the amount involved.... [Percentage] rates are also found in the field of taxation, as defendants suggest, including income taxes, retailers' occupation taxes, real-estate taxes, use taxes, and inheritance and transfer taxes."

*Schlib v. Kuebel* (1970), 46 Ill.2d 538, 550–51, 264 N.E.2d 377, 383, *aff'd,* 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502. Thus, the use of a percentage method to determine the fee has considerable precedent.

In the second tier of the Fee Payers's rational basis argument, we are again persuaded by the language of the United States Supreme Court in *Schlib:*

"[O]ne who deposits the full amount of his bail in cash is dispossessed of a productive asset throughout the period of the deposit; presumably, at least, its interim possession by the State accrues to the benefit of the State. Further, the State's protection against the expenses that inevitably are incurred when bail is jumped is greater when 100% cash ... is deposited or obligated than when only 10% of the bail amount is advanced."

*Schlib, supra,* 404 U.S. at 367, 92 S.Ct. at 485. Thus, the method of imposing a percentage fee in the case of a cash bail bond is not without rational basis.

█ Finally, the Fee Payers's somewhat nebulous arguments, that they were denied the right to bail, and that their right to liberty was contravened are likewise futile. A scrutiny of the record and the stipulated facts indicate that the Fee Payers were allowed to post bail, to request a change in bail type, and that they did indeed post bail. We can fathom no deprivation, actual or threatened, of the liberty of the Fee Payers because they paid an administrative fee as part of the cost of a cash bail bond. *Cf. State ex rel. Williams v. Ryan* (1986), Ind., 490 N.E.2d 1113 (Indiana Supreme Court specifically upheld the placing of various conditions on the posting of cash bail bond, discerning no constitutional violation of the right to bail).

In summary, the Fee Payers do not demonstrate that they were denied the right to post full cash bail, and failed to overcome the presumption that the general order or bail schedule which followed IC 35–33–8–3(2), denied them any constitutional rights.

Affirmed.

SHIELDS and GARRARD, P.JJ., concur.