**INDIANA FARMERS MUTUAL INSURANCE COMPANY, Appellant–Plaintiff,**

**v.**

**Opal ELLISON and Jennie Ellison Hawthorne, Appellees– Defendants.**

**No. 69A01–9610–CV–357.**

Court of Appeals of Indiana.

June 6, 1997.

---

Charles T. Bate, Bate Harrold & Bate, Shelbyville, for Appellant–Plaintiff.

Scott A. Faultless, Schuerman Kelley & Craig, Batesville, for Appellee–Defendant Jennie Ellison Hawthorne.

Jack A. Shields, Batesville, For Appellee–Defendant Opal Ellison.

## OPINION

BAKER, Judge.

In this appeal, we are asked to decide whether a homeowner's insurer is required to defend its insured for continually exposing a child to a child molester when the homeowner's policy excludes coverage for injuries which are expected or intended. Specifically, appellant-plaintiff Farmers Mutual Insurance Company (Farmers Mutual) contends it has no duty to defend appellee-defendant Opal Ellison because she expected or intended the injuries suffered by her grand-daughter, appellee-defendant Jennie Ellison Hawthorne,

when she was molested by her grandfather and Opal's husband, Clyde Ellison.

## FACTS

The record in the instant case reveals that Hawthorne regularly visited her paternal grandparents' home on holidays for family gatherings from 1983 to 1991. During one of Hawthorne's first visits, when she was only "eight or nine" years old, Clyde sexually molested her by placing her on his lap and touching her between her legs. Opal, who was sitting on the couch across the room from Clyde, hung her head, had tears in her eyes and refused to look at Hawthorne. R. at 115–17. Clyde's abuse of Hawthorne continued through 1991. As a result, Clyde was charged in February 1992 with two counts of Child Molesting,[1] both Class D felonies for acts of molestations which occurred on July 4, 1991 and November 21, 1991. Clyde pled guilty to both counts on October 24, 1994.

Thereafter, on March 10, 1995, Hawthorne filed a civil suit against Opal for negligently failing to protect her from Clyde's acts of molestation and for failing to maintain the residence in a reasonably safe condition.[2] Opal denied the allegations and requested Farmers Mutual, her homeowner's insurer,[3] to defend her in the civil suit. However, Farmers Mutual refused, claiming that the policy, which excluded coverage for bodily injury which is "expected or intended" by the insured, alleviated it from defending Opal. Thereafter, Farmers Mutual filed an action for declaratory judgment requesting the trial court to declare that it was not required to defend Opal under the policy.

On May 30, 1996, the trial court held a hearing on the complaint for declaratory judgment. Thereafter, the trial court entered judgment against Farmers Mutual, finding that it had a duty to defend Opal under the policy because Opal did not expect or intend the injuries suffered by Hawthorne. Specifically, the trial court found that Opal did not intend Hawthorne's injuries because there was no evidence that Opal was an active participant in or aided Clyde in abusing Hawthorne. The trial court also found that Opal did not expect Hawthorne's injuries because there was no evidence that Opal could have been practically certain that Clyde would molest Hawthorne. Farmers Mutual now appeals the declaratory judgment.

## DISCUSSION AND DECISION [4]

Farmers Mutual challenges the trial court's judgment requiring it to defend Opal under her homeowner's policy. Specifically, it contends that the evidence shows that Opal expected Hawthorne's injuries and, therefore, it was not required to defend her under the policy.

### I. STANDARD OF REVIEW

■ Initially, we note our standard of review. Pursuant to the Uniform Declaratory Judgment Act, declaratory orders, judgments and decrees have the force and effect of final judgments and are reviewed as any other order, judgment and decree. *Wendy's of Ft. Wayne, Inc. v. Fagan,* 644 N.E.2d 159, 161 (Ind.Ct.App.1994). Here, the trial court entered findings of fact and conclusions of law on its own motion when it rendered the judgment. In reviewing the judgment, we first determine whether the evidence supports the findings, and then whether the findings support the judgment. *Vanderburgh County Bd. Of Com'rs v. Rittenhouse,* 575 N.E.2d 663, 665 (Ind.Ct.App.1991), *trans.*

---

1. IND. CODE § 35–42–4–3.

2. Although Hawthorne also named Clyde as a defendant in her lawsuit, the parties stipulated prior to the declaratory judgment hearing that Farmers Mutual was not required to defend Clyde because the policy excluded coverage for intentional injuries. R. at 281–82. Thus, the only issue before the trial court on the motion for declaratory judgment was whether the insurance company was required to defend Opal under the homeowner's policy.

3. Section II of the homeowner's policy required Farmers Mutual to defend against a suit brought against an insured for "bodily injury ... caused by an occurrence to which this coverage applies," and pay for any "damages for which the insured is legally liable." R. at 235.

4. Oral argument was held in this cause on March 13, 1997.

*denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *DeHaan v. DeHaan*, 572 N.E.2d 1315, 1320 (Ind.Ct.App.1991), *trans. denied.* The judgment will be reversed only when clearly erroneous, that is, when the judgment is unsupported by the findings of fact. *Id.* We consider only the evidence most favorable to the judgment and all reasonable inferences flowing therefrom. We will not reweigh the evidence or assess the credibility of witnesses. *Id.*

■ The same standard applies when the trial court enters findings sua sponte, with one notable exception. The specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *In re Marriage of Snemis*, 575 N.E.2d 650, 652 (Ind.Ct.App.1991). We may affirm a general judgment on any theory supported by the evidence introduced at trial. *Id.*

■ Notwithstanding this general standard, Farmers Mutual urges this court to review the trial court's decision de novo because the parties' stipulated to the facts and presented no live witnesses during the hearing. In response, Opal and Hawthorne contend that this court should give deference to the trial court's findings under the general standard set forth above. To determine which standard of review is appropriate, we must examine the manner in which the evidence was submitted on the motion for declaratory judgment.

Here, the record reveals that the parties stipulated to the evidence which was offered in support of the complaint for declaratory judgment, including Hawthorne's civil complaint, the depositions of Hawthorne, Clyde and Opal and the homeowner's policy. Then, during the declaratory judgment hearing,

each party presented oral argument either in support of, or in opposition to the grant of declaratory judgment. However, neither party offered additional evidence in the form of written documents or live testimony. Thereafter, on its own motion, the trial court entered findings of fact and conclusions of law.

Based on this record, we conclude that the parties stipulated to the evidence rather than the facts.[5] As a result, the trial court was required to extrapolate the facts from the stipulated evidence and enter findings. Furthermore, the trial court weighed the evidence after determining the facts to conclude whether Farmers Mutual owed Opal a duty to defend her under the homeowner's policy. On review, this court is not permitted to second guess the trial court's findings of facts or reweigh the evidence. To do otherwise would encourage parties to re-litigate the facts, thereby hampering the resolution of cases. Because the trial court tediously sifted through the stipulated documents, we apply the standard used when a trial court enters findings of fact sua sponte and give deference to the trial court's findings.

### II. Farmers Mutual's Duty to Defend Opal

Next, we determine whether the trial court erred by concluding that Farmers Mutual was required to defend Opal under the homeowner's policy. According to the policy, Farmers Mutual has no duty to defend its insured for injuries which are either expected or intended. Farmers Mutual contends that the evidence shows that Opal expected Hawthorne's injuries and, therefore, the trial court erred by concluding that it was required to defend her under the policy.

■ This court has stated on several occasions that an insurer's duty to defend its

---

5. In support of its contention that this court is not bound by the trial court's findings, Farmers Mutual relies on *Estate of Payne v. Grant County Court*, 508 N.E.2d 1331 (Ind.Ct.App.1987), *cert. denied.*, 488 U.S. 853, 109 S.Ct. 139, 102 L.Ed.2d 112 (1988). In *Estate of Payne* this court held

that where the parties stipulate to the facts, this court is not bound by the trial court's findings. *Id.* at 1333. However, because we have determined that the parties stipulated to the evidence and not the facts, the holding in *Estate of Payne* is inapplicable to this case.

insureds is broader than its coverage for liability or duty to indemnify. *Trisler v. Indiana Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct.App.1991). The duty to defend is determined from the allegations of the complaint and from the facts known or ascertainable by the insurer after an investigation has been made. *Id.* However, if the pleadings fail to disclose a claim within the coverage limits or one clearly excluded under the policy, and investigation also reveals the claim is outside the coverage of the policy, no defense is required. *Id.*

Initially, we note that our research has revealed no case in Indiana which addresses whether an insurer must defend an insured who fails to protect a child from a child molester on the grounds that the insured "expects" the injuries which the child endures. However, this court has previously defined "expected" injury under an insurance policy in other contexts. Thus, we review this definition to determine whether the facts of this case show that Opal "expected" Hawthorne's injuries.

In *Indiana Farmers Mutual Ins. Co. v. Graham*, 537 N.E.2d 510, 512 (Ind.Ct.App. 1989), *trans. denied*, this court was asked for the first time to determine the definition of "expected" injury in an insurance policy which excluded coverage for expected or intended injuries. The *Graham* court stated that "expected" injury was one that occurred when the insured was "consciously aware that the injury was practically certain to result." *Id.* Shortly thereafter, this court in

*Bolin v. State Farm Fire and Cas. Co.*, 557 N.E.2d 1084, 1088 (Ind.Ct.App.1990), *trans. denied*, found that harm which "should have been anticipated" by an insured, was not expected and, therefore, the insurer was required to defend the insured.[6]

 We now determine whether the facts of this case show that Opal expected the injuries which Hawthorne suffered.[7] Here, the evidence submitted during the hearing on the complaint for declaratory judgment reveals that when Clyde first molested Hawthorne, Opal was in the room and was aware that the molestation was occurring. Further, Opal was present in the home from 1983 to 1991 when the other alleged molestations occurred. Thus, Opal continually exposed Hawthorne to Clyde despite her knowledge of the previous molestation. This evidence establishes that Opal was more than negligent. She knew that Clyde had molested Hawthorne and continued to expose Hawthorne to Clyde in her home. As a result, we find that the trial court's conclusion that Opal was not consciously aware that the harm caused by Clyde's actions were practically certain to occur, is not supported by the evidence. We come to this conclusion despite the trial court's finding that Opal could not have been practically certain that Hawthorne would be molested because other relatives were present in the house during the alleged molestations. Even though others may have been present while Hawthorne visited Clyde and Opal, the fact remains that Opal had knowledge of Clyde's previous mo-

---

6. Specifically, in *Bolin*, this court was asked to determine whether the definition of expected included harm which was caused by reckless conduct such that an insurance company would not be required to defend its insured for harm which resulted from the insured's reckless acts. In making its determination, the *Bolin* court reviewed the definition of reckless set forth in the Restatement (Second) of Torts which states: "a person is reckless, if he realizes or, from the facts which he knows, should realize there is a strong probability that harm may result, even though he hopes or expects his conduct will prove harmless." *Id.* at 1088. After reviewing this definition, the court concluded that harm which results from reckless conduct could not be equated with harm which was expected because reckless conduct by definition included injuries which the

insured "should have anticipated." *Id.* The court then concluded that because injuries which the insured "should have anticipated" formed a concept which was descriptive of negligence, an insurance company would be required to defend its insured for injuries caused by reckless conduct.

7. This court notes that Opal and Clyde continue to deny that Clyde molested Hawthorne on any occasion despite that fact that Clyde previously pled guilty to two counts of child molestation of Hawthorne. However, for purposes of this appeal, we must determine whether the facts as set forth in the complaint and those discovered during the investigation, if proven to be true, would exclude Opal and Clyde from coverage.

lestations and failed to protect Hawthorne. Therefore, the trial court erred by concluding that Farmers Mutual was required to defend Opal in Hawthorne's civil action.

■ Further, our conclusion that Opal expected Hawthorne's injuries is not altered by the fact that the allegations in Hawthorne's complaint were based in negligence. In her complaint, Hawthorne alleged that Opal "negligently and carelessly failed to supervise and look-out for the health, safety and well-being of Hawthorne by allowing Clyde Ellison to perpetrate, and not taking any measures to preventing [sic] him from perpetrating, the sexually abusive acts." R. at 102. Thus, based on the complaint alone, one could conclude that Hawthorne's injuries were the result of Opal's negligent behavior. However, as stated above, a court is not limited to the allegations of the complaint in determining whether an insurer owes its insured a duty to defend. Rather, it must look to the facts obtained after reasonable investigation, which we have previously determined show that Opal was consciously aware that Hawthorne would be harmed by Clyde's abuse. Thus, the trial court erred by finding that Opal did not expect the injuries which Hawthorne suffered and requiring it to defend Opal under the policy.[8]

Judgment reversed.

NAJAM and RUCKER, JJ., concur.

---

**8.** Farmers Mutual also contends that it owed Opal no duty to defend her in Hawthorne's civil action because Opal intended Hawthorne's injuries when Clyde molested her. However, having already determined that Opal expected Hawthorne's injuries, we need not address this contention.