**Layne SMITH, Appellant,**

v.

**Louise Ann BROWN, Appellee.**

No. 31A01–0111–CV–448.

Court of Appeals of Indiana.

Nov. 15, 2002.

Robert P. Hamilton, Lorch & Naville, LLC, New Albany, IN, Attorney for Appellant.

Gordon D. Ingle, Matthew Jon McGovern, Corydon, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Louise Ann Brown filed a complaint against Layne Smith alleging fraud and conversion, and seeking to quiet title with respect to real property located in Harrison County. Smith filed a counterclaim alleging that Brown defaulted on her mortgage agreement and seeking foreclosure. Following a bench trial, the trial court entered judgment in favor of Brown in the amount of $29,652.72 plus interest and costs and attorney's fees. In addition, the court granted fee simple title in Brown, extinguishing any claim to that title al-

leged by Smith. The trial court also entered judgment in favor of Smith on his counterclaim in the amount of $18,374.93 plus interest, and the court entered a foreclosure decree. Smith appeals from the trial court's judgment and presents several issues for our review, which we consolidate and restate as:

1. Whether the trial court erred when it found that Glenn Roberson was Smith's agent.

2. Whether the trial court erred when it calculated the damages award.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In January 1993, Brown entered into a real estate contract with Richard Jordan to purchase approximately 180 acres in Harrison County for $60,000. Jordan financed the sale, and Brown made a down payment of $10,000. In January 1995, Brown sought financing to pay off her contract with Jordan, and she contacted Glenn Roberson of Banker's Title Corporation. A few months later, Roberson advised Brown that he had contacted Smith, who agreed to provide her financing on a $60,000 loan to pay off Jordan.

Smith negotiated with Jordan to pay off Brown's contract for $42,000, and on June 14, 1995, Smith executed a deed with Jordan which purported to convey the property to Smith. On June 15, 1995, Roberson and Smith visited Brown at her place of employment. Because Brown was in the middle of her shift, she did not have very much time to meet with them. So, in the course of a meeting that lasted approximately fifteen minutes, Roberson and Smith had Brown sign several documents. Brown asked Roberson and Smith whether she might need a lawyer to look over the documents with her first, but Roberson told Brown that she did not need a lawyer

and Smith did not comment on the question.

On June 15, 1995, Smith and Roberson presented the following documents for Brown's signature:

1. an Agreement stating that Smith and Brown each purchased half interests in the subject real estate; that Brown borrowed $25,768.57 and gave Smith a mortgage on her half interest; that Brown would rent Smith's half interest for $50 per month; and that if Brown missed four payments on the mortgage, Smith would record a warranty deed held in escrow in lieu of foreclosure ("the Agreement");

2. a warranty deed conveying Brown's half interest in the property to Smith;

3. a warranty deed from Jordan and Brown conveying the property to Smith;

4. a promissory note for $25,768.57 from Brown to Smith ("promissory note");

5. a mortgage on Brown's one-half interest in the property ("mortgage"); and

6. a compliance agreement.

As a result of the transaction, Jordan and Brown conveyed the property to Smith, who conveyed a half interest in the property back to Brown, who took a mortgage out on her half interest with Smith. And Brown rented Smith's half interest and agreed to convey the entire property to Smith if she fell behind by four mortgage payments.

Because Brown was rushed, she did not carefully read the documents before signing them. Brown scanned some of the documents, and she asked questions about some of the wording that she did not understand. For instance, Brown asked Roberson why one of the documents stated that she would only have a one-half interest in the property. In response, Roberson told Brown that this meant only that Smith was entitled to one-half of the pro-

ceeds from the sale of any crops or goods produced on the property. In fact, that document was the warranty deed conveying a one-half interest in the property to Smith. When Brown asked Roberson and Smith whether she would be able to sell the land to pay off Smith, Roberson said yes and said that when she paid off Smith, the property would still belong to her. Smith did not contradict any of Roberson's misleading statements. Smith paid Roberson a brokerage fee of $4,500.

In December 1996, Brown attempted to refinance her mortgage with a bank, but the loan officer informed her that she did not own the property. Brown learned that the documents Roberson and Smith had asked her to sign actually conveyed one-half of the property to Smith. Regardless, in January 1997, Brown attempted to sell the property and received an offer of $90,500. Brown intended to use the proceeds from that sale to pay off Smith, but Smith would not agree to sell his half interest in the property. In the meantime, Brown had ceased making mortgage payments to Smith, so Smith recorded the warranty deed that had been held in escrow and divested Brown of her interest in the property.

Brown filed a complaint against Smith,[1] and Smith filed a counterclaim against Brown seeking payment of the balance on her mortgage and foreclosure. Smith eventually stipulated to the trial court that the Agreement with Brown, whereby Smith could record the warranty deed in lieu of foreclosure, was void as against public policy. Following a bench trial, the trial court entered extensive findings and conclusions. The court found, in part, that Roberson acted as Smith's agent; Roberson and Smith entered into a scheme to exert unauthorized control over Brown's property; Smith, through his agent Rober-

son, committed fraud against Brown which ultimately led to the total loss of her interest in the property; Smith presented Brown with misleading and contradictory loan documents in order to obtain an interest in the subject real estate; and Smith violated public policy and committed conversion when he recorded the warranty deed in lieu of foreclosure. The trial court also concluded that Brown was entitled to fee simple title in the subject property as well as money damages. But the trial court also awarded Smith money damages pursuant to the mortgage agreement. And the trial court ordered that the property be sold to satisfy the judgments. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

■ The trial court's judgment was accompanied by findings of fact and conclusions thereon which the trial court made sua sponte. Thus, in reviewing the judgment, we first determine whether the evidence supports the findings, and then whether the findings support the judgment. *Indiana Farmers Mut. Ins. Co. v. Ellison*, 679 N.E.2d 1378, 1380 (Ind.Ct. App.1997), *trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* at 1381. The judgment will be reversed only when clearly erroneous, that is, when the judgment is unsupported by the findings of fact. *Id.* We consider only the evidence most favorable to the judgment and all reasonable inferences flowing therefrom. *Id.* We will not reweigh the evidence or assess the credibility of witnesses. *Id.*

---

1. Brown named other defendants, but Smith   is the only defendant involved in this appeal.

■ The same standard applies when the trial court enters findings sua sponte, with one notable exception. *Id.* The specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *Id.* We may affirm a general judgment on any theory supported by the evidence introduced at trial. *Id.*

### Issue One: Agency

■ Smith first contends that the trial court erred when it found that Roberson acted as Smith's agent in his fraudulent transactions with Brown. Smith does not argue on appeal that Roberson did not perpetrate a fraud against Brown. Smith is correct that one who asserts that there was an agency relationship has the burden of proving its existence. *See Rubsam v. Estate of Pressler*, 537 N.E.2d 520, 523 (Ind.Ct.App.1989), *trans. denied.* Agency is a relationship resulting from the manifestation of consent by one party to another that the latter will act as an agent for the former. *Wickey v. Sparks*, 642 N.E.2d 262, 269 (Ind.Ct.App.1994) (citation omitted), *trans. denied.* In addition, the agent must acquiesce in the arrangement and be subject to the principal's control. *Id.* An apparent agency is also initiated by a manifestation of the principal. *Id.* However, the necessary manifestation is one made by the principal to a third party who, in turn, is instilled with a reasonable belief that another individual is an agent of the principal. *Id.* It is essential that there be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party. *Id.* Statements or manifestations made by the agent alone are not sufficient to create an apparent agency relationship. *Id.*

■ A principal is liable for any misrepresentations of his agent undertaken within the scope of the agency, whether or not the principal has knowledge of the fraud. *Mid–Continent Paper Converters, Inc. v. Brady, Ware & Schoenfeld, Inc.*, 715 N.E.2d 906, 909 (Ind.Ct.App. 1999). This rule is grounded in the sound policy that it is preferable to place the burden of an agent's fraud on the principal rather than on an innocent third party to the agency relationship. *Id.* Moreover, allowing principals to accept the benefits of their agents' fraudulent transactions without liability for the fraud could lead to an increase in such transactions and reduce incentives to hire honest managers and monitor their behavior. *Id.* A principal can avoid liability by submitting to a rescission of the contract or otherwise making the injured party whole, but acceptance of the benefits of the misrepresentation leads to liability. *Bischoff Realty, Inc. v. Ledford*, 562 N.E.2d 1321, 1324 (Ind.Ct.App.1990).

Smith contends that the only evidence to support the trial court's finding that Roberson was Smith's agent was the fact that Smith paid a $4,500 brokerage fee to Roberson. But Smith maintains that one-half of that fee was included in the amount of Brown's promissory note and that the only reason he paid it was because no one else had the money to pay it at closing. In addition, Smith argues that, in fact, Roberson was *Brown's* agent, because Brown initiated contact with Roberson and directed all of her questions at closing to Roberson. Brown responds that the evidence and inferences to be drawn therefrom support the trial court's finding that Roberson was Smith's agent. We agree with Brown.

First, there was evidence to support a determination that Smith manifested to Brown his consent that Roberson act as his agent. Specifically, when Roberson and Smith met with Brown at her place of employment, Smith sat silent as Roberson

explained the documents to Brown. And Roberson's explanations included the misrepresentations regarding Smith's one-half property interest and the purpose of the warranty deed. Smith did not contradict or question any of Brown's misleading statements. And at the closing, Smith paid Roberson a brokerage fee for his services.

Second, the fact that Roberson explained each of the documents to Brown without any participation by Smith also supports a determination that Roberson acquiesced in the arrangement. And while Roberson prepared some of the documents, Smith testified that he prepared two of the documents himself, but he allowed Roberson to explain those documents in addition to the ones that Roberson had prepared. Finally, it was Smith who directly benefited from the terms of the documents that Roberson had prepared, which gives rise to a reasonable inference that Smith dictated the terms of the transaction and that Roberson was acting on Smith's behalf and was subject to Smith's control. For all of these reasons, we cannot say that the trial court's conclusion that Roberson was Smith's agent was clearly erroneous.[2]

### Issue Two: Damages

Smith next contends that the trial court erred when it awarded Brown damages in the amount of $9,884.24 pursuant to Indiana Code Section 34–24–3–1, which provides for treble damages in a civil action for conversion or deception. Specifically, Smith maintains that his conduct did not constitute either conversion or deception, so Brown is not entitled to damages under the statute. We cannot agree.

■■■■■ A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion. Ind.Code § 35–43–4–3. A criminal conviction is not a prerequisite for bringing a civil action for conversion. *See Kopis v. Savage,* 498 N.E.2d 1266, 1270 (Ind.Ct.App.1986). While Smith admits that his agreement with Brown allowing Smith to record a warranty deed in lieu of foreclosure is void as an illegal contract, he maintains that he cannot be said to have exerted *unauthorized* control over Brown's property because she consented to the agreement and signed the warranty deed. But Smith ignores the trial court's finding that Brown was induced by fraud to sign the documents, and fraud vitiates consent. *See Auto Owners Mut. Ins. Co. v. Stanley,* 262 F.Supp. 1, 4 (N.D.Ind.1967). Moreover, a party cannot consent to an agreement that violates Indiana law. Thus, when Smith recorded the warranty deed in lieu of foreclosure, in violation of Indiana law and public policy, he committed an act of conversion. We conclude that the trial court properly awarded Brown damages pursuant to Indiana Code Section 34–24–3–1.[3]

■■■■ Finally, Smith contends that the trial court erred when it granted Brown equitable relief in the form of restructuring the loan transaction in addition to awarding her money damages in the

---

**2.** Smith also contends that the trial court erred when it found that he and Roberson entered into a scheme to exert unauthorized control over Brown's property. But Smith's sole argument is that this finding "hinges on the wrongdoing of Roberson which the trial court imputed to Smith." In other words, Smith argues that this finding is erroneous because Roberson was not his agent. Having

already decided the agency issue, we need not separately address the trial court's finding on the scheme issue.

**3.** We need not address whether the trial court erred when it found that Smith had committed deception, because the statute applies to actions for conversion *or* deception.

amount of $19,768.48. Smith maintains that Brown was entitled to *either* equitable relief *or* money damages, but not both. Again, we cannot agree.

■ Fraud in the inducement of a contract is a basis for rescission. *Hart v. Steel Products, Inc.*, 666 N.E.2d 1270, 1275 (Ind.Ct.App.1996), *trans. denied.* A party bringing an action for fraud has an election between two remedies. *Id.* He may affirm the contract, retain the benefits, and seek damages; or he may rescind the contract. *Id.* If he elects to rescind the contract, the trial court must adjust the equities and attempt to return the parties to the status quo. *Blaising v. Mills,* 176 Ind.App. 141, 374 N.E.2d 1166, 1172 (1978). This usually necessitates a return of money or other things received or paid under the contract, plus reimbursement as special damages, for any reasonable expenditures incurred as a proximate result of the fraudulent conduct. *Hart,* 666 N.E.2d at 1275.

In this case, the trial court upheld the mortgage agreement and awarded Smith's wife, Leyda Smith, to whom Smith had assigned his interest in the agreement, $52,067.60, which represented the principal balance owed, plus late charges, real estate taxes paid, and 18% interest. In addition, the trial court awarded Smith $18,374.93 to reimburse him for his total expenses in purchasing the real estate from Jordan. But, regarding the separate Agreement between Smith and Brown, which provided for recording the warranty deed in lieu of foreclosure, the trial court declared that agreement to be void as against Indiana law and public policy. And, to return Brown to the status quo, the trial court awarded her $19,768.48, which reflected the amount of interest that had accrued on the loan between June 29, 1997 and the October 19, 2001 judgment. The court found that Brown would not have been obliged to pay Smith that interest if Smith had not thwarted Brown's effort to sell the property after receiving an offer in April 1997. The evidence supports the trial court's finding on this issue. We conclude that the trial court properly awarded Brown the $19,768.48 in money damages.

Affirmed.

SHARPNACK, J., and
FRIEDLANDER, J., concur.