**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JOHN J. KLOTZ**
Klotz Law Office
Terre Haute, Indiana

ATTORNEY FOR APPELLEE:

**DAVID P. FRIEDRICH**
Wilkinson, Goeller, Modesitt, Wilkinson & Drummy
Terre Haute, Indiana

**FILED**
Jul 17 2012, 9:06 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| WILLIAM M. STEELE, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | No. 84A01-1110-SC-484 |
| ) | |
| DANIEL CALLAHAN ) | |
| ) | |
| Appellee. ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Christopher A. Newton, Judge
Cause No. 84D04-1011-SC-9731

**July 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Daniel Callahan ("Callahan") filed a complaint in Vigo Superior Court alleging that William M. Steele ("Steele") negligently surveyed Callahan's property, and that Steele's negligent survey proximately caused Callahan to incur damages related to an additional survey of the property, the moving of a fence, and related landscaping. Steele filed a motion to dismiss on the grounds that Callahan's complaint was untimely. Following a bench trial, the trial court denied the motion to dismiss and entered judgment for Callahan in the amount of $4,000. However, the trial court denied Callahan's request for attorney fees. Steele appeals the trial court's denial of the motion to dismiss and its finding that inconsistencies in Steele's surveys were the proximate cause of Callahan's damages. Callahan cross-appeals on the trial court's denial of his claim for attorney fees.

We affirm in part, reverse in part, and remand to the trial court to enter judgment consistent with this opinion.

## Facts and Procedural History

In 2008, Callahan contracted with Steele, a licensed surveyor, to survey Callahan's property, locate the four corners of Callahan's property, and to give Callahan an "approximation of where [he] should put [a] fence." Tr. p. 7. In the 2008 survey of Callahan's property, Steele found four existing corner pins. The southeast corner was marked on the survey with "Exist. I.P. in Concrete," indicating that Steele found an existing iron pin, or monument,[1] at that location indicated on the survey document. Ex.

---

[1] Monuments are pins, pipes, stakes, or other forms of representation used by surveyors to indicate boundary lines.

Vol. p. 3. In addition, Steele marked each corner of the Callahan property with wooden stakes and ribbon. Steele charged Callahan $400 for the survey.

Based on Steele's 2008 survey and starting at the southeast corner of his parcel, Callahan "eyeball[ed]" a line along the entirety of Callahan's south boundary line, which was approximately 285 feet long. Tr. p. 8. Callahan had a fence built along this eyeballed line. Callahan testified that when eyeballing the line, he was aware that his fence might encroach onto his neighbor's property but was not concerned because he was bearing the cost of the fence and improvement to his property.

Subsequent to Callahan's survey in April 2008 and fence installation in the summer of 2008, Matthew Riggs ("Riggs") purchased the land directly south of and contiguous with Callahan's property. Riggs sought to install a dog fence along the northern boundary of his parcel and the southern boundary of Callahan's parcel. In preparation for installing the fence, Riggs located three of the four corner pins of his property after September 2008. He was unable to locate his northeast (Callahan's southeast) corner pin. Riggs then performed basic calculations and concluded that Callahan's fence encroached on Riggs's land by up to nine feet in some places.

Because of his own observations about the location of Callahan's fence, in 2009, Riggs hired Steele, who had performed the 2008 survey on Callahan's property, to survey Riggs's newly purchased land. When retained to perform the survey for Riggs, Steele was unaware that Riggs's property was contiguous with Callahan's and did not recall that he had surveyed Callahan's property only eighteen months prior to his survey for Riggs.

3

While conducting the 2009 survey for Riggs, Steele was unable to locate a pin for Riggs's northeast (Callahan's southeast) corner of the property and set a new pin in that location. Steele testified that he was unable to precisely locate the pin because of an overgrowth of wild honeysuckle in the northeast corner of Riggs's property. Tr. p. 55. Evidence indicates that the new pin Steele set was six to seven inches south of the pin he had previously located in his 2008 survey for Callahan. Tr. p. 56.

Callahan testified that he used neither pin as the starting point from which he eyeballed the line to erect the fence; rather, he used the "wooden stakes that had orange tape across the top of it" placed in the ground by Steele in 2008. Tr. p. 8. Callahan testified that the company he employed to erect the fence "eyeballed the line, the same as I had and they put in a fence for us." Tr. p. 9. At trial, both Callahan and Steele referred to a concrete mass with orange paint as being near a boundary marker. Steele had marked this piece of concrete as a reference point when setting the new pin in 2009. Steele testified that the true boundary marker at that corner was the location marked on the 2008 survey, which he stated was the "Exist I.P. in Concrete." When initially confronted by Riggs with the proposition that Callahan's fence encroached onto Riggs's property, Callahan testified that he told Riggs: "[S]ince we eyeballed it because we didn't have the entire line marked, at most it might be a foot over the line." Tr. p. 76.

In late 2009, Riggs and Callahan jointly hired James David Myers ("Myers") to rectify the discrepancy in the surveys conducted by Steele. While conducting this third survey, Myers found an iron pipe, which he referred to as the "Crowley pipe" at the southeast corner of Callahan's property. Tr. p. 29. This pipe, which Myers described as

4

"significantly better and closer to the record distances shown," was not indicated specifically as the Crowley pipe on either survey conducted by Steele. Tr. p. 30. Myers indicated that his company "excavated and found the Crowley pipe just below the surface." Tr. p. 30. However, Myers was unable to state whether the Crowley pipe was the "Exist. I.P. in Concrete" indicated by Steele in his 2008 survey of Callahan's property. Myers testified that the terms "pin" or "pipe" are interchangeable when referring to monuments intended to serve as boundary markers. Tr. p. 45. Myers testified that he found two markers near Callahan's southeast corner and the distance between the Crowley pipe and the iron pin set by Steele in 2009 was between six and seven inches. Myers also testified that Steele's surveys were deficient in that they failed to show both measured (ones taken by a surveyor during the performance of a survey) and recorded (ones provided from written evidence such as previously-conducted surveys, deeds, etc.) distances on the surveys and that both surveys lacked a surveyor's report. Tr. pp. 33, 34, 37, 38. Subsequent to notification by the Myers survey that the fence Callahan had erected was encroaching onto Riggs's property by between eight and ten feet, Callahan had the fence moved. Tr. p. 14.

On November 15, 2010, Callahan filed a small claims complaint against Steele in Vigo Superior Court alleging Steele negligently performed the survey in 2008 and that Callahan incurred damages as a result of Steele's negligence. The matter was set for a bench trial for September 1, 2011. On the day of the trial, Steele filed a motion to dismiss alleging that the two-year statute of limitations for actions against surveyors had expired.

5

On September 29, 2011, the trial court issued its judgment in favor of Callahan. As to Steele's motion to dismiss, the trial court applied the statute of limitations as an occurrence based statute, finding that "the damage occurred when Callahan's neighbor contracted with Steele to have his property surveyed in November 2009 and subsequently informed Steele of the discrepancies." Appellant's App. p. 7. Therefore, the trial court denied Steele's motion to dismiss.

In its findings, the trial court found that Steele's surveys were inconsistent and proximately caused Callahan and Riggs to incur the expense of the additional survey by Myers. The trial court entered judgment for Callahan in the amount of $4,000, which included $400 for Steele's 2008 survey, $2,255 for one-half of the Myers survey, $989 to move Callahan's fence, and $356 for related landscaping.[2] Finally, the trial court denied Callahan's request for attorney fees. Steele now appeals the denial of the motion to dismiss as untimely, the finding that the inconsistencies in his surveys proximately caused the need for the third survey, and the damages awarded to Callahan. Callahan cross-appeals the denial of his request for attorney fees.

**Standard of Review**

When a trial court enters findings *sua sponte*, as it did in this case, we use a two-step standard of review to determine first, whether the evidence supports the findings and next, whether the findings support the judgment. Humphries v. Ables, 789 N.E.2d 1025, 1030 (Ind. Ct. App. 2003) (citing Smith v. Brown, 778 N.E.2d 490, 494 (Ind. Ct. App.

---

[2] In regards to landscaping, Callahan asserts that he would not have had a company "bulldoze and level out and smooth out" a piece of land had he known that a portion of it was actually on Riggs's property. Tr. p. 16.

2002)). We consider only evidence most favorable to the judgment and all reasonable inferences drawn therefrom. Id. We will not reweigh evidence nor reassess the credibility of witnesses. Id. *Sua sponte* findings control only the issues they cover, whereas a general judgment controls as to the issues upon which there are no findings. Tracy v. Morrell, 948 N.E.2d 855, 862 (Ind. Ct. App. 2011). A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. Id. at 862. When a claim is tried by the trial court without a jury, "the court on appeal shall not set aside the findings or judgment unless clearly erroneous." Ind. Trial Rule 52(A). Therefore, a challenger to a judgment bears a heavy burden and must show that the trial court's findings were clearly erroneous.

The clearly erroneous standard is defined according to whether the trial court's judgment was negative or adverse. Garling v. Ind. Dep't of Natural Res., 766 N.E.2d 409, 411 (Ind. Ct. App. 2002). A negative judgment is rendered against a party who bears the burden of proof, whereas an adverse one is "entered against a party defending on a given question." Vanderburgh Cnty. Bd. of Comm'rs v. Rittenhouse, 575 N.E.2d 663, 666 (Ind. Ct. App. 1991). Here, the trial court entered judgment in favor of Callahan, the party bearing the burden of proof. Therefore, Steele is appealing an adverse judgment and has the burden to show that the trial court's findings were clearly erroneous and not "supported by substantial evidence of probative value." Garling, 766 N.E.2d at 411. However, even if the evidence is substantial, we will reverse the judgment if we are "left with a definite and firm conviction a mistake has been made." Id.

**I. Statute of Limitations and Motion to Dismiss as Untimely**

Steele claims that the two-year statute of limitations that relates to actions against surveyors has expired and thus, the complaint is time-barred. Specifically, Steele claims that the trial court used the wrong accrual date and thus improperly denied his motion to dismiss by finding that Callahan's damages as a result of Steele's negligence did not occur until Riggs presented Callahan with the 2009 survey. Steele asserts that the damage to Callahan occurred in early 2008, when Callahan had the fence built.

Indiana favors statutes of limitation because they "afford security against stale claims and promote the peace and welfare of society." Shaum v. McClure, 902 N.E.2d 853, 855 (Ind. Ct. App. 2009), trans denied (quoting Morgan v. Brenner, 712 N.E.2d 500, 502 (Ind. Ct. App. 1999), trans denied). "They are founded on the notion that one with a well-founded claim will not delay in enforcing it." Shaum, 902 N.E.2d at 855. "The nature or substance of the cause of action, rather than the form of the action, determines the applicable statute of limitations." Id. (quoting King v. Terry, 805 N.E.2d 397, 400 (Ind. Ct. App. 2004)).

The applicable statute of limitations in this case is Indiana Code section 34-11-2-4, which provides that:

> An action for:
>     (1) injury to a person or character,
>     (2) injury to personal property; or
>     (3) a forfeiture of penalty given by a statute;
> must be commenced within two (2) years after the cause of the action accrues.[3]

---

[3] Although the trial court properly applied a two-year statute of limitations, the specific statute referenced by the trial court was incorrect. The trial court applied Indiana Code section 34-11-2-3 and made the following finding regarding the statute of limitations: "The Court finds the two-year statute of limitations applicable in this case is

Surveyors are recognized as professionals who can be liable in tort for failing to exercise reasonable care in conducting their duties. Racquet v. Thompson, 693 N.E.2d 969 (Ind. Ct. App. 1998) (citing Estate of Reasor v. Putnam Cnty., 635 N.E.2d 153 (Ind. 1994)). In Racquet, this court applied Indiana Code section 34-1-2-2(1), the predecessor to section 34-11-2-4, to a surveyor who failed to identify a piece of property as being located in a flood plain. Section 34-11-2-4 was subsequently applied in Shaum v. McClure, 902 N.E.2d 853 (Ind. Ct. App. 2009), where landowners sued a surveyor for a discrepancy among the boundary stakes the surveyor had placed on a lot. The Shaums argued that section 34-11-2-4 was inapplicable because the action they brought related to real property, not personal property, as defined in the statute. Id. at 856. We concluded that the claim was one for professional malpractice; therefore, the two-year statute of limitations in section 34-11-2-4 was applicable. Id.

"Under Indiana's discovery rule, a cause of action accrues, and the statute of limitations begins to run when the claimant knows or in exercise of ordinary diligence should have known of the injury." Pflanz v. Foster, 888 N.E.2d 756, 759 (Ind. 2008); Wehling v. Citizens Nat. Bank, 586 N.E.2d 840, 843 (Ind. 1992). "For an action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred." Shaum, 902

---

found in I.C. 34-11-2-3 . . . This statute is 'occurrence based' meaning that it 'accrues when the conduct that caused the damage occurs.' The Court finds the damage occurred when the Plaintiff's neighbor contracted with the Defendant to have his property surveyed in November 2009 and subsequently informed the Defendant of the discrepancies." However, the cited statute applies to "physicians, dentists, surgeons, hospitals, sanitariums, or others." Ind. Code § 34-11-2-3 (2012). The Indiana Supreme Court ruled in Shideler v. Dwyer, 275 Ind. 270, 417 N.E.2d 281 (1981), that "the doctrine of *ejusdem generis* limits the application to the term 'or others,' as used in [Indiana Code section 34-11-2-3], to others of the medical care community." (discussing the predecessor statute, which the court held was not applicable to a malpractice action against an attorney).

N.E.2d at 857 (quoting <u>Cooper Industries, LLC v. City of South Bend</u>, 899 N.E.2d 1274, 1280 (Ind. 2008)).

Here, the trial court correctly concluded that Callahan's damage occurred when Riggs contracted with Steele to have his property surveyed in November 2009 and subsequently informed Callahan of the discrepancies. The discrepancies in Steele's 2008 and 2009 surveys necessitated the third, Myers survey to rectify the difference in the previous two. Callahan filed his claim on November 15, 2010, only a year after Riggs notified Callahan of the discrepancy in surveys, thus well within the applicable statute of limitations. Therefore, the trial court properly denied Steele's motion to dismiss Callahan's complaint as untimely.

## II. Negligence and Proximate Cause

Steele next argues that the trial court erred in 1) finding that inconsistencies in Steele's 2008 and 2009 surveys caused Callahan's damages in regards to third survey, and 2) awarding damages resulting from the movement of the fence, the 2008 Steele survey, and certain landscaping expenses. Steele claims that the inconsistencies were inconsequential and that Callahan's own negligence was the proximate cause of his damages relating to the movement of the fence, the 2008 Steele survey, and landscaping. Callahan claims that Steele's failure to accurately and consistently identify the boundary marker in the southeast corner of Callahan's property was the cause of Callahan's injuries.

Negligence consists of: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) injury to the plaintiff proximately caused by

10

that breach.  Foddrill v. Crane, 894 N.E.2d 1070, 1075 (Ind. Ct. App. 2008).  On appeal, Steele fails to reference the first two elements (duty and breach), but solely contends that his actions were not the proximate cause of Callahan's injuries.

"One who contracts to perform services may commit both a breach of contract and the tort of negligence when he negligently fails to perform in a workmanlike manner." Essex v. Ryan, 446 N.E.2d 368, 370 (Ind. Ct. App. 1983).  "And certain professionals, by virtue of the nature of their business, make representations, render opinions, and give advice in the course of performing a contract."  Id.  "Surveyors . . . may be liable in tort for failure to skillfully discharge their contractual obligation."  Id. at 371.

"An indispensable element of an action for negligence is that the act complained of must be the proximate cause of the accident producing the injury."  Havert v. Caldwell, 452 N.E.2d 154, 158 (Ind. 1983).  In defining proximate cause, the Indiana Supreme Court has stated that a "negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated."  Id.  Foreseeability of the injury is the critical test for determining the defendant's liability.  Nat'l. R.R. Passenger Corp. v. Everton, 655 N.E.2d 360, 366 (Ind. Ct. App. 1995).   The foreseeability of whether the defendant's act proximately caused the plaintiff's injuries is a question for the trier of fact.  Id. at 366-67.

Steele argues that the discrepancy in surveys was inconsequential because Callahan's fence encroached onto Riggs's land by nine feet, a distance much greater than the seven-inch variance between surveys.  Further, Steele claims that the fence would

11

have encroached onto Riggs's property regardless of whether Callahan used the 2008 or 2009 location of the southeast corner boundary marker from which to have the fence erected. Steele also asserts that the encroaching fence was built prior to Callahan being notified of the discrepancy and cites testimony from Callahan indicating that Callahan was aware at the time the fence was erected that it could intrude onto Riggs's land. He also claims that because of the discrepancy between the 2008 and 2009 surveys, the 2009 survey conducted by Steele gave Callahan an additional six inches of land and that the fence would have encroached onto Riggs's property regardless.

Callahan's chief claim is that he used the 2008 survey conducted by Steele as the baseline according to which he had the fence erected. Had this survey been accurate, Callahan asserts that he would not have been informed of the discrepancy between the 2008 and 2009 surveys, a discrepancy that led him to incur the expenses of an additional survey and to move his fence, plus the cost of the initial landscaping prior to the erection of the fence.

We agree with the trial court that the inconsistences in Steele's survey proximately caused Callahan and Riggs to incur costs related to the third survey conducted by Myers. Steele could have reasonably foreseen or anticipated that Callahan and Riggs could each reasonably rely upon his surveys for them. Had Steele's surveys been consistent, any need for an additional survey would have been avoided. The damage to Callahan regarding the additional survey occurred when he was notified of the disparity in the surveys; it was at this time that he incurred costs to rectify the discrepancy by contracting

12

for the Myers survey. We affirm that portion of the trial court's judgment of $2,255, which is the cost of one-half of the Myers survey.

However, we cannot conclude that Steele's actions proximately caused Callahan's injuries in regards to the movement of the fence, the 2008 survey conducted by Steele, and landscaping costs.

Under negligence theory, the injured party is able to recover only those damages proximately caused by the tortfeasor's breach. INS Investigations Bureau, Inc. v. Lee, 784 N.E.2d 566, 577 (Ind. Ct. App. 2003), trans denied. "The damages claimed for such a breach must be the natural, foreseeable and proximate consequence of the breach." Id. An award will be reversed only when it is not within the scope of evidence before the trier of fact. Id. Here, the trial court's conclusion that Steele's negligence caused Callahan's injury as it relates to the movement of the fence was clearly erroneous.

First, the fence encroached onto Riggs's land by a margin greatly disproportionate to the variance in surveys. A full year before Callahan was notified of the less-than-seven-inch discrepancy between surveys, he built a fence that encroached onto Riggs's land by up to nine feet. Further, even though the 2009 survey gave Callahan an *additional* six to seven inches of land, he erected a fence that would have encroached onto Riggs's land by at least eight feet within the framework of either the 2008 or 2009 southeast corner boundary location. Simply said, any error in the first survey would have given Callahan *less* land than which he was entitled to possess and therefore cannot explain how the fence was erected beyond his actual property line at all, much less an additional eight feet onto Riggs's parcel. Callahan's argument would have been more

13

persuasive had the fence needed to be moved closer to Callahan's property by the same distance as the disparity in surveys. But we fail to see how Steele's negligence proximately caused the necessary movement of the fence by approximately nine feet. Steele could not have reasonably foreseen or anticipated that Callahan would reasonably rely upon his 2008 survey to erect a fence nine feet onto his neighbor's property.

Utilization of Steele's 2008 survey leads to a conclusion that the fence encroached onto Riggs' property by nine feet; the 2009 survey yields a distance of eight-and-a-half feet. Therefore, the fence was an encroaching one regardless of the six-inch disparity in the surveys.

Callahan asserts that the trial court's finding could be based on its belief that Callahan used the concrete slab with orange paint, which is 9.5 feet to the south and 11.7 feet to the east of the more precise location of the southeast corner, as a reference point from which to start eyeballing the line for the fence. However, this directly contradicts Callahan's own testimony that "[Steele] had wooden stakes that had orange tape across the top of it and I went by those stakes" and that "I never even looked at a chunk of concrete because, you know, we were operating off the wooden posts with the [orange] tape across the top." Tr. pp. 8, 22. He also indicated that he didn't notice any concrete until 2009, when he and Riggs went to look at the corner location in dispute. Tr. p. 22. Finally, Callahan's own testimony indicates that he knew from the outset that the fence he had erected encroached upon Riggs's property. Tr. pp. 75-76. For all of these reasons, we reverse the $989 portion of the trial court's judgment related to Callahan's expense incurred to move the fence.

14

We also fail to see how Steele's actions proximately caused Callahan damages regarding the 2008 survey and landscaping costs. Callahan retained Steele's services to locate the four corner pins of Callahan's property. This Steele did with some accuracy. Indeed, had Callahan "eyeballed" the line for his fence within any reasonable margin of error (and had he not chosen to mow well across the property line onto Riggs's property), it is entirely possible that no dispute would have arisen at all.

"Damages are awarded to compensate an injured party fairly and adequately for the loss sustained." INS Investigations Bureau, Inc. v. Lee, 784 N.E.2d 566, 577 (Ind. Ct. App. 2003). A party is limited in recovery to the loss actually suffered; the injured party cannot be placed in position better than one in which the breach had not occurred. Bank One Nat'l. Ass'n v. Surber, 899 N.E.2d 693, 704 (Ind. Ct. App. 2009). Additionally, windfalls and double recovery are disfavored. Id. The trial court's judgment is erroneous in both regards. We therefore reverse the $400 portion the trial court's judgment related to the cost of Steele's 2008 survey and the $356 portion of the judgment related to Callahan's initial, preparatory landscaping for the fence installation.

### III.    Attorney Fees

Callahan cross-appeals the trial court's denial of attorney fees. Specifically, Callahan seeks recovery of attorney fees as a result of the boundary dispute with Riggs. The "American Rule" states that each party pays its own attorney fees. Liberty Mut. Ins. Co. v. OSI Industries, Inc., 831 N.E.2d 192, 205 (Ind. Ct. App. 2005). Indiana follows this general principle. Id. Ind. Code § 34-52-1-1 also reflects this principle and strictly limits that award of attorney fees to narrow and exceptional grounds:

15

(a) In all civil actions, the party recovering judgment shall recover costs, except in those cases in which a different provision is made by law.

(b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

   (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
   (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
   (3) litigated the action in bad faith.

(c) The award of fees under subsection (b) does not prevent a prevailing party from bringing an action against another party for abuse of process arising in any part on the same facts. However, the prevailing party may not recover the same attorney's fees twice.

Callahan does not claim that attorney fees should be awarded pursuant to subsection (b), but rather asserts a claim for attorney fees under the third-party litigation exception.

In 2005, Indiana adopted a third-party litigation exception to the general rule that parties pay their own attorney fees in Masonic Temple Ass'n of Crawfordsville v. Ind. Farmers Mut. Ins. Co., 837 N.E.2d 1032, 1039 (Ind. Ct. App. 2005). The elements of the third-party litigation exception are as follows:

   (1) the plaintiff became involved in litigation either because of a breach of contract by the defendant, or because of defendant's tortious conduct, that is, that the party sought to be charged with the fees was guilty of a wrongful or negligent act or breach of agreement;

   (2) the litigation was with a third party, not with the defendant from whom the fees are sought to be recovered; and

   (3) the attorneys fees were incurred in that third-party litigation.

Id. (quoting W. Sunview Props. LLC v. Federman, 338 F.Supp.2d 1106, 1127–28 (D.

16

Haw. 2004)). Callahan asserts that Steele's negligence caused the discrepancy in the surveys, which necessitated a third-party survey by Myers to determine the actual boundary between their properties. Therefore, Callahan mistakenly asserts that attorney fees incurred from this dispute should be awarded to him.

"Care must be taken to distinguish between the rule prohibiting the recovery of attorney fees from the losing party by the prevailing party in litigation and the rule allowing the recovery of attorney fees incurred in litigation with third parties necessitated by defendan[t's] wrongful act." Masonic Temple, 837 N.E.2d at 1038 (quoting Nalivaika v. Murphy, 458 N.E.2d 995, 997 (Ill. App. Ct. 1983)). It is fundamentally important to determine that an "action for which the attorney fees are claimed is brought or defended by a third party, a party that is not part of the contract, agreement, or events that caused the original litigation to arise." Id. at 1038-39. Further, these litigation expenses and attorney fees must be foreseeable by the defendant. Id. at 1039.

Callahan's reliance on Masonic Temple fails for at least two reasons. First, Masonic Temple concerns an insurer's basic, contractual duty to defend its insured in litigation for a claim arguably within the coverage of the underlying policy, whether with or without a reservation of rights. In Masonic Temple, Indiana Farmers Mutual Insurance Company, the carrier, denied coverage to the Masonic Temple of Crawfordsville, causing the Masonic Temple to hire counsel to defend itself.

Second, in the case before us, Riggs is the "third-party" contemplated by Masonic Temple; Steele is not. There was no litigation between Callahan and Riggs regarding the boundary line. Indeed, these two resolved their differences as neighbors should, based on

17

the Myers survey, and Callahan has been compensated for his portion of that cost.

For all of these reasons, the trial court properly denied Callahan's claim for attorney fees.

### IV. Conclusion

The trial court properly denied Steele's Motion to Dismiss. The trial court properly found that inconsistencies in the 2008 and 2009 surveys conducted by Steele proximately caused Callahan and Riggs to incur costs related to the third survey by Myers. The trial court's findings that Steele's negligence proximately caused Callahan's damages regarding the movement of the fence, the 2008 Steele survey, and his initial landscaping costs, were clearly erroneous. The trial court properly denied Callahan's claim for attorney fees.

Affirmed in part, reversed in part, and remanded to the trial court to enter judgment consistent with this opinion.

ROBB, C.J., and BAILEY, J., concur.