**James S. TRACY, Appellant–Plaintiff,**

**v.**

**Steve MORELL and Pauline M. Morell, Appellees– Defendants.**

No. 59A01–1009–PL–488.

Court of Appeals of Indiana.

May 19, 2011.

Larry W. Medlock, Medlock Law Office, Paoli, IN, Attorney for Appellant.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

James S. Tracy filed a complaint against Steve Morell[1] alleging fraud in the sale of a farm tractor with an altered identification number. Morell filed a counterclaim alleging that Tracy was in default on the promissory note Tracy had given in payment for the tractor. Following a bench trial, the trial court dismissed Tracy's complaint with prejudice for failing to meet his burden of proof. And the trial court concluded that Tracy owed Morell a balance of $4000 on his note as alleged in Morell's counterclaim. On appeal, Tracy contends that the trial court erred when it dismissed his complaint and concluded that he owed a balance on the note. We determine that there was ample evidence in the record for a judgment on the merits and no reason in fact or in law why the complaint should have been dismissed. We also determine that the trial court did not err when it held that Tracy failed to meet his burden of proof on his fraud claim. But we conclude that the contract for sale of the tractor is unenforceable because there was a mutual mistake of fact between the parties and the contract violates public policy. Thus, we hold that Tracy has no further obligation on the note. Further, we hold that Tracy is entitled to a rescission of the contract for sale of the tractor and to a money judgment in the amount he has paid on the note together with interest.

We affirm in part, reverse in part, and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

In 2002, Morell sold Tracy a used Ford New Holland tractor for $12,500. Tracy signed a promissory note in which he agreed to pay Morell $500 down and $500 per month with no interest until the note was paid in full. Tracy initially made monthly payments totaling $8,500, but stopped making payments in June 2003.

In September 2003, the State charged Morell with four counts of receiving stolen property, namely, tractors and other farm equipment. After Tracy heard about the charges, he contacted the Orange County Sheriff's Department and asked that the Department investigate whether the tractor he had purchased from Morell was stolen property. Accordingly, Detective Lieutenant Michael Dixon, with the assistance of the Indiana State Police, inspected Tracy's tractor and found that its

---

1. Tracy named Morell's wife, Pauline, as a defendant in his complaint. Because Pauline was only tangentially involved in the underly-ing facts of this case, we will refer to Morell as the sole defendant for ease of discussion.

identification number [2] had been altered. Detective Dixon impounded Tracy's tractor pending further investigation.

Morell ultimately pleaded guilty to four counts of receiving stolen property, as Class D felonies. At least one of the items that Morell admitted to having stolen had a missing identification number, and another of the stolen items displayed an identification number that belonged to another machine. Detective Dixon suspected that the tractor Morell had sold to Tracy was also stolen because of the altered identification number. But Detective Dixon's efforts to confirm that suspicion were inconclusive. A man whose Ford New Holland tractor had been stolen came to look at Tracy's tractor to see if he could identify it, but he was unable to determine whether it was his because of a lack of identifying marks. And, after Detective Dixon learned that the cost would be prohibitive to dismantle the tractor to find the valid identification number located inside the engine, he and the prosecuting attorney abandoned the investigation.

On December 11, 2003, Tracy filed a complaint against Morell alleging fraud. In particular, Tracy asserted that Morell knowingly misrepresented that he owned the tractor when he sold it to Tracy and that the tractor had been seized by law enforcement officials as stolen property. Tracy sought treble damages and attorney's fees under the Crime Victim's Relief Act. See Ind.Code § 34–24–3–1. Morell filed a counterclaim alleging that Tracy had defaulted on the promissory note and seeking the unpaid balance of $4000, attorney's fees, and court costs.

The trial court held a bench trial on June 21, 2010.[3] Kelly Minton, Orange County Prosecuting Attorney, testified regarding Morell's convictions. And Minton testified that he and Detective Dixon "obviously" suspected that Morell had stolen the tractor he sold to Tracy, but that Minton decided not to expend the resources necessary to prove theft. Transcript at 14. Detective Dixon also testified that he strongly suspected that Morell had stolen the tractor. And he testified that a technician from the Indiana State Police Auto Theft Squad had discovered that the identification number on Tracy's tractor had been "ground out and filled in with putty" and painted over. Id. at 28. The technician "tried to [use] acid to bring the numbers back, but it was ground too deep and they couldn't be recovered." Id. at 28–29. Detective Dixon then testified regarding how difficult it would have been to ascertain the tractor's identification number:

> After talking with a New Holland dealer, they advised that the tractor would have to be torn apart, the engine taken apart, and the numbers taken from the engine, and then contact the manufacturer in Japan to see which dealer the tractor was sold to. And that would've just been cost prohibitive.

Id. at 30.

Finally, Morell testified in relevant part as follows:

> Q: Did you know the tractor had altered [identification] numbers or ground off [identification] numbers?
>
> A: No, sir.

---

**2.** The trial testimony consistently refers to the "VIN" or vehicle identification number of the tractor. But a VIN is associated with a motor vehicle, and a farm tractor is not a motor vehicle under Indiana statutes. See Ind.Code § 9–13–2–180. For purposes of this appeal, we will refer to the tractor's identification number instead of a VIN.

**3.** At the time of trial, the tractor had not been returned to Tracy. Also, fees were incurred as a result of the tractor being impounded, and those fees had not yet been paid.

Q: *You didn't know the [identification] numbers had been ground off and putty filled in and repainted over?*

A: *No, sir.*

Q: How long did you own that tractor before you sold it to Mr. Tracy?

A: I'm gonna say longer than a year. I don't know roughly really right off hand.

Q: Where'd you get it?

A: Bought it.

Q: Where'd you buy it from?

A: Uh, I believe, I don't know, I believe it come out of Richmond, Indiana.

Q: Okay, who did you buy it off of?

A: I don't know, this was ten years ago.

Q: How much did you pay for it?

A: Quite a bit. Seventeen, maybe. Seventeen five, I don't know, thereabouts.

Q: Did you buy it off an individual or a dealer?

A: I bought it from an individual.

Q: And he was located in Richmond?

A: I believe that's where it was, I can't swear to it. But I think so.

\* \* \*

Q: Did you ever have a chance to look for the [identification] numbers or serial numbers?

A: Never really came up or spend anytime looking.

Q: And when you sold that tractor to Mr. Tracy, you didn't know the [identification] numbers had been ground out and putty put back in and repainted?

A: Had no idea.

Q: And, but you don't know who you bought it off of and you don't remember when you bought it?

A: You want a day, a month? I have no idea what you're asking for.

Q: Did you . . .

A: (interjecting) I bought it, I bought it . . .

Q: . . . take it off your taxes in . . .

A: . . . many years ago. I bought it many years ago. I had it for a time and I sold it to James Tracy.

Q: Did you put it on your taxes as depreciation?

A: No.

Q: You didn't?

A: No.

\* \* \*

Q: And, uh, now you've been convicted of receiving stolen property here in Orange County for items of farm equipment that you received that were stolen?

A: I have.

Q: And you pled guilty to that?

A: I did.

\* \* \*

Q: Yeah. And you don't, you think it's just a coincidence that you pled guilty to four other counts involving altered [identification] numbers and farm equipment and this tractor you sold Mr. Tracy is altered, is that just a coincidence?

A: I believe it is.

Q: *Now, you had no intention of selling Mr. Tracy a stolen tractor.*

A: *No, sir.*

Q: And you don't think that tractor is stolen?

A: At the time I had no reason to believe that.

Q: Do you think the tractor is stolen now that you know about it?

A: I have no idea.

Q: Really. After you found out that the [identification] numbers had been changed and it'd been impounded, did you ever think to contact the guy you bought it from in Richmond?

A: I was unable to do that.

Q: Really? When did you try to contact him?

A: When all this went down about ten years ago.

Q: Uh-huh. And did you give your attorney that information about the individual you bought it off of?

\* \* \*

A: Well, when I bought the tractor, I believe the individual was moving out of state and at the time I couldn't remember, he was moving out West when I purchased the tractor.

Q: You brought the guy down you bought the [ATV] from to prove it was not stolen?[4]

A: That's true.

Q: And why didn't you do it on the Ford tractor?

A: I already told you, I couldn't locate the fella. . . . The fella that I got the tractor from was moving out West somewhere. I don't mean in Indiana, I mean way out West.

Q: Did you ever produce a receipt or a canceled check where you bought it?

A: I did not.

Q: Why, did you pay cash?

A: I did.

Q: So you paid Seventeen Thousand Dollars ($17,000.00) in cash for that tractor?

A: That's correct.

Q: Where did you get the cash from?

A: I don't think that's important.

Q: Where did you get it from?

A: Pardon me?

Q: Where did you get it from?

A: What, the cash?

Q: Yeah.

A: Where you usually get cash.

Q: I don't know, where do you usually get cash?

A: I don't know. A lotta times I borrow it.

Q: Okay, so you borrowed it. Who did you borrow it from?

A: (Laughs) I have no idea. It's ten years ago.

Transcript at 43–47 (emphases added).

In its judgment entry, the trial court made the following relevant findings of fact:

3. Mr. Tracy suspected there may have been some illegal activities and that the Morells did not own the tractor;

4. Tracy informed the Orange County Sheriff who oversaw the investigation. There were no proven irregularities and there was no evidence of a crime found. The Prosecuting Attorney of Orange County released the impound and declined to file any criminal charges against the Morells;

5. Tracy has made no effort to take possession of the tractor, an implement that was impounded by his act and unverified suspicion;

6. Pursuant to IC 9–18–1–1 registration license plates and titles are not required of farm tractors, as a matter of law this article does not apply to farm

---

4. Morell was initially charged with stealing an ATV, but he proved that he had bought it, and the State dismissed that charge.

wagons, farm tractors, or farm machinery;

7. *James S. Tracy is the equitable owner of the tractor* and has been throughout the pendency of this action. Any charges incurred due to impounding and storage is the obligation of the owner;

8. *Steve and Pauline Morell have an enforceable promissory note* signed by Mr. Tracy. Mr. Tracy owes the Morells the balance of the obligation, being $4,000.00.

*Id.* at 5 (emphases added). The trial court then "dismissed" Tracy's complaint with prejudice for "fail[ure] to bear his burden of proof." *Id.* at 6. This appeal ensued.

## DISCUSSION AND DECISION

■ Morell has not filed an appellee's brief. Thus, we will not undertake the burden of developing arguments for the appellee. *Painter v. Painter*, 773 N.E.2d 281, 282 (Ind.Ct.App.2002). Applying a less stringent standard of review, we may reverse the trial court if the appellant establishes prima facie error. *Id.* Prima facie error is defined as at first sight, on first appearance, or on the face of it. *Id.*

■ The trial court entered findings and conclusions sua sponte. Sua sponte findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. *Mullin v. Mullin*, 634 N.E.2d 1340, 1341 (Ind.Ct.App.1994). A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.* When a court has made special findings of fact, an appellate court reviews sufficiency of the evidence using a two-step process. First, it must determine whether the evidence supports the trial court's findings of fact; second, it must determine whether those findings of fact support the trial

court's conclusions of law. *Estate of Reasor v. Putnam County*, 635 N.E.2d 153, 158 (Ind.1994). Findings will only be set aside if they are clearly erroneous. *Id.* Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.* A judgment is ·clearly erroneous if it applies the wrong legal standard to properly found facts. *State v. Van Cleave*, 674 N.E.2d 1293, 1296 (Ind.1996), *reh'g granted in part*, 681 N.E.2d 181 (Ind.1997). In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. *Id.* at 1295.

## The Complaint

■ Initially, we observe that the trial court sua sponte dismissed Tracy's complaint with prejudice following a bench trial. This court has held that a trial court may not sua sponte dismiss an action unless the court lacks jurisdiction or is otherwise authorized by statute or the rules of procedure. *See Alleshouse v. State Student Assistance Comm'n*, 565 N.E.2d 340, 344 (Ind.Ct.App.1991). We hold that it was error for the trial court simply to dismiss Tracy's complaint. While the trial court held otherwise, Tracy stated a claim and presented ample direct testimony and circumstantial evidence supporting a reasonable inference that Morell knowingly misrepresented his ownership of the tractor when he sold it to Tracy.

■ To prove fraud, Tracy was required to show that Morell made a material misrepresentation of past or existing facts made with knowledge or reckless ignorance of its falsity, and the misrepresentation caused reliance to the detriment of Tracy. *See Fimbel v. DeClark*, 695 N.E.2d 125, 127 (Ind.Ct.App.1998). The evidence presented at trial shows that both

the Orange County Prosecuting Attorney and Detective Dixon suspected that Morell had stolen the tractor he sold to Tracy or that Morell knew that the tractor was stolen when he sold it to him. Detective Dixon took steps to prove that suspicion, but he and the prosecuting attorney agreed that it would be too expensive to pursue the evidence needed to support a criminal charge against Morell. Further, Morell testified that he had pleaded guilty to receiving stolen property with respect to two other tractors and other farm equipment, some of which had altered or destroyed identification numbers, and that that conduct occurred at around the same time that Morell had sold the tractor to Tracy.

 Direct or positive proof is not essential to establish fraud; circumstantial evidence will suffice if there are grounds from which fraud may be reasonably inferred. *Carrell v. Ellingwood,* 423 N.E.2d 630, 635 (Ind.Ct.App.1981). Here, although the trial court found otherwise, the evidence supports a reasonable inference that Morell knowingly misrepresented his ownership of the tractor.[5] Again, because Tracy presented evidence sufficient to establish a prima facie case of fraud, dismissal was not appropriate.

 Morell's defense amounted to a profession of ignorance and a convenient inability to recall pertinent facts. On the face of the record, his answers appear evasive and non-responsive. But we cannot judge Morell's credibility on appeal and, accordingly, we cannot discount or disregard his testimony. Indiana Code Section 35–43–4–2.3, which regulates dealing in altered property, provides:

(a) As used in this section, "dealer" means a person who buys or sells, or offers to buy or sell, personal property. The term does not include the original retailer of personal property.

(b) A dealer who recklessly, knowingly, or intentionally buys or sells personal property in which the identification number or manufacturer's serial number has been removed, altered, obliterated, or defaced commits dealing in altered property, a Class A misdemeanor. However the offense is a Class D felony if the dealer has a prior conviction of an offense under this chapter or if the fair market value of the property is at least one thousand dollars ($1,000).

This is not a strict liability statute, and proof of mens rea, or culpability, is required. *See* Ind.Code § 35–41–2–2. The trial court found, in effect, that Tracy had failed to carry his burden of proof that Morell recklessly, knowingly, or intentionally sold the tractor with an altered identification number. As the reviewing court, we consider only the evidence most favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess the credibility of witnesses.

We note that the trial court's finding that "there was no evidence of a crime found," suggests that the court may have applied the wrong evidentiary standard. In a civil action under the Crime Victim's Relief Act, the burden of proof is not beyond a reasonable doubt but by a preponderance of the evidence. *See Sam and Mac, Inc. v. Treat,* 783 N.E.2d 760, 766 (Ind.Ct.App.2003). We cannot discern from the record or from the court's written

---

**5.** Morell did not object to the evidence of his convictions under Indiana Evidence Rule 404(b). Regardless, given the similarity of those crimes to the allegations of fraud with respect to the tractor he sold to Tracy at around the same time, the evidence of the other crimes would be admissible under the intent exception to Rule 404(b). *See, e.g., Fisher v. State,* 641 N.E.2d 105, 109 (Ind.Ct.App. 1994).

entry which evidentiary standard the trial court applied, but we need not resolve that question. Without clear evidence to the contrary, we presume on appeal that the trial court, as factfinder, correctly applied and followed the law. *Bordenkecher v. State,* 562 N.E.2d 49, 51 (Ind.Ct.App.1990), *trans. denied.*

At trial, Morell testified that he did not know that the identification number had been ground out, filled in with putty, and painted over. Thus, crediting his testimony as we must on appeal, the trial court did not err when it found, in effect, that Morell lacked the necessary culpability, that is, that he either "recklessly, knowingly, or intentionally" dealt in altered property, in violation of Indiana Code Section 35–43–4–2.3, and Morell also avoided a civil judgment for violation of Indiana's Crime Victim's Relief Act, Indiana Code Section 34–24–3–1.

### The Counterclaim

Our consideration of Morell's counterclaim presents a much different question. In his counterclaim, Morell asked the trial court to enforce the promissory note and order Tracy to pay the $4000 unpaid balance. The trial court found that Tracy was the equitable owner of the tractor and that Tracy owed Morell $4000. We cannot agree.

■■■■■ The trial court concluded that Morell had "an enforceable promissory note signed by Mr. Tracy." However, mutual assent is a prerequisite to the creation of a contract. *Wilkin v. 1st Source Bank,* 548 N.E.2d 170, 172 (Ind.Ct.App.1990). Where both parties share a common assumption about a vital fact upon which they based their bargain, and that assumption is false, the transaction may be avoided if because of the mistake a quite differ-

ent exchange of values occurs from the exchange of values contemplated by the parties. *Id.* There is no contract, because the minds of the parties have in fact never met. *Id.*

In the landmark case of *Sherwood v. Walker,* 66 Mich. 568, 33 N.W. 919 (1887), at the time of sale both the seller and purchaser of a cow believed that the cow was barren and would not breed. Accordingly, the parties agreed on a purchase price of approximately $80. However, immediately prior to delivery, the seller discovered that the cow was bearing a calf, which increased its value to approximately $750 to $1000. On appeal, the court held that the transaction was voidable because the mistake of the parties "was not of the mere quality of the animal, but went to the very nature of the thing. A barren cow is substantially a different creature than a breeding one.... She was not a barren cow, and, if this fact had been known, there would have been no contract." *Id.* at 923.

■■■■ Here, as in *Sherwood,* the undisputed evidence shows that the sale was based upon a common, mistaken assumption about a vital fact regarding "the very nature of the thing." *See id.* Both Tracy and Morell testified that they did not know that the tractor's identification number had been altered. If Morell was ignorant that the tractor's identification number had been altered, then he, like Tracy, was also mistaken about the tractor's value. When the deal was struck, Morell agreed to sell and Tracy agreed to buy the tractor, free and clear of liens and encumbrances, for the sum of $12,500. Instead, both as a matter of fact and a matter of law, the tractor was altered property and was not marketable[6] in any legitimate

---

6. There was some discussion at trial about Indiana Code Sections 9–18–8–2 and –3

whereby the owner of a *motor vehicle* may apply for a special identification number

farm equipment market. The essential terms, including both the sale and the sale price, were based on a mutual mistake about a vital fact that Morell had good title and lawful authority to sell the tractor to Tracy free and clear. But a tractor with an altered identification number has no bona fide fair market value because it cannot be knowingly or intentionally sold without committing a crime. For that reason, Tracy has recourse against Morell without regard to fraud. There was a mutual mistake of fact between them that went to the heart of the bargain, to the substance of the whole contract, and, as such, there was no contract, as a matter of law.

 The parties' contract is also unenforceable because dealing in altered property violates public policy. One essential function of the judiciary is to recognize and enforce the rights and obligations of parties to legitimate private agreements. But the courts cannot be called upon to enforce contracts that violate the law or that violate public policy. While certain agreements are prohibited outright by statute and thus void, others may be found void on public policy grounds. *Straub v. B.M.T.*, 645 N.E.2d 597, 599 (Ind.1994). Whether an agreement is void on public policy grounds is a question of law to be determined from the surrounding circumstances of a given case. *Id.*

Our legislature has made it a crime to deal in altered property. *See* Ind.Code § 35–43–4–2.3. In this case, the State abandoned its attempt to prove that Morell had stolen the tractor. And Tracy did not prove to the trial court's satisfaction that Morell had either committed a crime or had violated the Crime Victim's Relief Act. But that is not the end of our inquiry and

does not mean that we must enforce this transaction. The tractor's identification number was destroyed, and we can think of no lawful reason why the number was ground down, filled in with putty and painted over. Rather, the only purpose for concealing the true identity of the tractor was to move the property outside the stream of lawful commerce into a secondary or "black market."

We decline to adopt a rule that someone may sell altered property with impunity and then claim ignorance as a complete defense in a civil action arising from the sale. Such a rule would violate public policy because in the sale of personal property, unless otherwise agreed, the seller's ownership free and clear of liens and encumbrances is presumed. Here, the tractor was encumbered by an altered identification number. Whether or not a crime occurred, and whether or not statutory relief is available under the Crime Victim's Relief Act, the law should not permit a seller to transfer property with an altered identification number without being held accountable for it.

The trial court found that Tracy is the "equitable owner" of the tractor. Appellant's App. at 5. Apparently the trial court meant that until Tracy has paid the sale price in full, Morell remains the legal owner of the tractor while Tracy is the beneficial or equitable owner. This would be a correct finding if the transaction were not fatally flawed from its inception. But the finding is not supported by the evidence and is, therefore, clearly erroneous.

One incident of ownership is the owner's right to convey the property he owns. An "owner" is one who has the right to possess, use, *and* convey something. Black's

---

where the vehicle's VIN number has been destroyed. But, again, a farm tractor is not a motor vehicle. *See* I.C. § 9–13–2–180. Ac-

cordingly, there is no evidence that Morell or Tracy could obtain a new identification number for the farm tractor.

Law Dictionary 1130 (7th ed.1999). Now that Tracy has actual knowledge that the tractor has an altered identification number, he cannot sell the tractor without committing a crime. *See* I.C. § 35–43–4–2.3. Even if he were to pay the balance of the sale price in full, Tracy would never have the unqualified right of an owner to lawfully transfer ownership of the tractor to another. In other words, his equitable title would never merge into unqualified legal title. Under these circumstances, Tracy's interest in the tractor is limited to the amount he has paid thus far on the promissory note, which he is entitled to recover. Given the mutual mistake of fact between the parties, the trial court erred when it found that Tracy is the "equitable owner" of the tractor because his ownership can never ripen into full, unqualified legal ownership.

 Indeed, under these circumstances, it would be inequitable to foist the tractor upon Tracy. Thus, we are left with a firm conviction that a mistake has been made. *See Van Cleave*, 674 N.E.2d at 1295. Strict application of their contract would lead to an inequitable result and requires the intervention of equity. *See Skendzel v. Marshall*, 261 Ind. 226, 241, 301 N.E.2d 641, 650 (1973). Equity will look upon that as done which ought to be done. *Id.* On appeal, we have the judicial duty to sua sponte direct the trial court to apply appropriate equitable principles in such a case. *See id.* Here, the undisputed evidence demonstrates that there was a mutual mistake of fact, that there was no meeting of the minds on essential terms, and that Tracy is entitled to a rescission of the contract. *See Wilkin*, 548 N.E.2d at 172. Under Indiana Appellate Rule 66, this court may order entry of final judgment and grant any other appropriate relief. *See Simon Property Group, L.P. v. Brandt Construction, Inc.*, 830 N.E.2d 981,

993 (Ind.Ct.App.2005) (ordering judgment for plaintiff in "only" amount supported by the evidence under authority of Appellate Rule 66(C)(4)).

 In sum, Tracy has shown prima facie error on appeal. He has shown that he is entitled to a rescission based upon a mutual mistake of fact. *See Poppe v. Jabaay*, 804 N.E.2d 789, 796 (Ind.Ct.App. 2004), *trans. denied, cert. denied*, 543 U.S. 1164, 125 S.Ct. 1333, 161 L.Ed.2d 138 (2005); *see also Franklin v. White*, 493 N.E.2d 161 (Ind.1986) (holding rescission of contract proper after determination of mutual mistake of fact). And the contract violates the public policy against dealing in personal property with an altered identification number. A rescission requires that we adjust the equities and return the parties to the status quo ante. *See Smith v. Brown*, 778 N.E.2d 490, 497 (Ind.Ct.App. 2002). As Judge Posner recently observed in an Indiana case before the Seventh Circuit, when a rescission occurs, the parties are put back, so far as possible, in the positions they would have occupied had the contract never been made in the first place. *Scheiber v. Dolby Laboratories, Inc.*, 293 F.3d 1014, 1022 (7th Cir.2002). Here, in order to implement a rescission, we hold that Morell is the owner and is entitled to possession of the tractor, subject to any impoundment and storage charges, that the promissory note is null and void, and that Tracy is entitled to recover the amount he has paid on the promissory note.

 The promissory note did not provide for interest, although interest income would be imputed to Morell for tax purposes. Interest represents the time value of money, *see Reese v. Reese*, 696 N.E.2d 460, 463 (Ind.Ct.App.1998), and prejudgment interest may be taken into account in adjusting the equities following a rescission where, as here, the calculation

of such interest is ascertainable in accordance with fixed rules of evidence. *See Economy Leasing Co., Ltd. v. Wood,* 427 N.E.2d 483, 488 (Ind.Ct.App.1981). Thus, Tracy is entitled to recover interest on the principal payments he made to compensate him for the loss of the use of those payments. *See id.* The dates and amounts of those seventeen $500 payments which total $8,500 are set out in Exhibit "A" to Tracy's complaint, which was offered and admitted in evidence as Plaintiff's Exhibit 2 at trial.

We reverse and remand with instructions that the trial court calculate prejudgment interest at the statutory rate from the date of each $500 payment to the date of judgment, add that sum to the $8,500 in principal, and enter a money judgment for Tracy and against Steve Morell and Pauline Morell, jointly and severally, plus court costs. *See* Ind.Code § 34–52–1–1. The trial court may enter judgment on the current record or may conduct such further proceedings as it deems necessary and appropriate, not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded with instructions.

FRIEDLANDER, J., and BAILEY, J., concur.