**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Dec 27 2013, 9:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JOHN A. KRAFT**
**JENNIFER KRAFT KUCHLE**
Young, Lind, Endres & Kraft
New Albany, Indiana

ATTORNEY FOR APPELLEE:

**JONI L. GRAYSON**
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE ESTATE OF RUBY SHULER | ) | |
| BLANKENBAKER BOTKINS, DECEASED, | ) | |
| MARK ALLEN SHULER and DAVID LEE | ) | |
| SHULER, | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. 22A01-1307-ES-337 |
| | ) | |
| ESTATE OF GEORGE BOTKINS, by | ) | |
| LARRY BOTKINS, | ) | |
| Appellee. | ) | |

APPEAL FROM THE FLOYD CIRCUIT COURT
The Honorable Robert L. Bennett, Special Judge
Cause No. 22C01-0903-ES-29

**December 27, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Mark Allen Shuler ("Mark") and David Lee Shuler ("David"), as co-personal representatives of the estate ("the Estate") of Ruby Shuler Blankenbaker Botkins ("Ruby"), appeal the probate court's entry of a final accounting.

We affirm.

**Issue**

Mark and David raise two issues for our review. We find one dispositive, which we restate as whether the trial court abused its discretion when it denied their motion to set aside the Family Settlement Agreement ("the Agreement") that provided for resolution of the probate proceedings.[1]

**Facts and Procedural History**

Ruby was married to George Botkins ("George"), and in 1987 executed a will ("the 1987 Will"). That will devised to George a life estate in real estate Ruby owned in Bonita Springs, Florida, with the remainder to go to Ruby's brother, Roy Lee Shuler ("Roy"). The 1987 Will provided for the residual assets of the Estate to be equally divided among five of Ruby's nieces and nephews. Mark and David were among these five individuals.

In 1992, Ruby was still married to George and executed another will ("the 1992 Will"). Like the 1987 Will, the 1992 Will provided that George would receive a life estate in the Bonita Springs real estate and that the residual assets of the Estate would be granted in

---

[1] Mark and David also contend that, under the doctrine of dependent relative revocation, the Estate should be administered pursuant to a 1987 will Ruby executed. Because we find no error in the trial court's denial of the motion to set aside the Agreement, we do not reach this issue.

equal shares to five nieces and nephews. Mark and David were, again, among those beneficiaries.

The 1992 Will included other provisions not present in the 1987 Will. Unlike the 1987 Will, the 1992 Will granted to George a life estate in real estate in Jeffersonville, Indiana. Also unlike the 1987 Will, the remainder of both life estates was to become part of the residue of the Estate. The 1992 Will also provided that $1,000.00 was to be inherited by each of George's four children (Ruby's stepchildren), and that $10,000 each would be inherited by George, Ruby's brother Roy, and Ruby's sister-in-law Alma H. Shuler ("Alma").

Both the 1987 Will and the 1992 Will designated Roy as executor and personal representative of the Estate, with Mark and David to serve as co-executors and co-personal representatives in the event Roy would not or could not serve in such a capacity.

On October 9, 2008, Ruby died. Roy declined to serve as executor and personal representative. On February 27, 2009, Mark and David filed a verified petition to probate the 1992 Will, for issuance of letters testamentary, and for supervised administration of the Estate ("the Probate Petition"). Because the original 1992 Will had been lost, the Petition sought to probate the 1992 Will based upon a photocopy of the original that Mark and David submitted along with the Probate Petition.

On March 11, 2009, George filed an objection to David and Mark's petition. George objected to probating the 1992 Will because Mark and David did not submit an original 1992 Will. George alleged that, as a result, the 1992 Will should have been presumed revoked and that Ruby's assets should thus have been distributed as though Ruby died intestate.

3

On October 8, 2009, the parties filed a Notice of Submission of Family Settlement Agreement ("the Notice of Settlement"). In the Notice of Settlement, the parties requested that the trial court approve the Agreement and allow the administration of the Estate to proceed in accordance with the Agreement's terms.

The Agreement provided that George would receive a payment of $25,000, which is the amount to which a surviving spouse was then entitled to receive under Indiana Code § 39-1-4-1. The Agreement also provided that the net assets of the Estate would be divided in half, with one-half to be granted to George.[2] The funds allocated to George would be used to pay the four $1,000 grants to George's four children, as was set forth in the 1992 Will. The other half of the net estate would be distributed to Roy ($10,000), Alma ($10,000), and Ruby's five nieces and nephews, each of whom would receive 20% of the assets remaining from the half of the net estate not allocated to George and his children.

Pursuant to the Agreement, George would have no further interest in the Estate, and by entering into the Agreement all parties represented their intent "to compromise and settle all claims, controversies and disputes existing between or among them in any way arising out of or related to [the Estate]," and that the Estate was not obligated to any other individuals or heirs at law. (Appellants' App'x at 27.) The Agreement bore the signatures of George's attorney-in-fact, Larry Botkins ("Larry"), and those of David and Mark as co-personal representatives of the Estate.

---

[2] The real property in Bonita Springs, Florida, and Jeffersonville, for which the 1992 Will had provided devisements, had previously been sold.

4

On October 23, 2009, the probate court approved the Agreement and granted David and Mark authority to proceed with administration of the Estate pursuant to the Agreement's terms. On January 2, 2010, George died, and subsequently, George's estate was substituted as a party in George's place.

On June 18, 2010, Mark and David filed a petition seeking to set aside the Agreement and the probate court's order accepting the Agreement for purposes of administering the Estate ("the Petition to Set Aside"). As a basis for the Petition to Set Aside, Mark and David alleged that the original of the 1987 Will, which had not been located previously, had been produced by Ruby's former attorney.

On April 11, 2011, after hearings on October 14, 2010 and March 18, 2011, the probate court denied the Petition to Set Aside. Mark and David subsequently sought interlocutory review of the probate court's order, but this Court declined such review. The Estate was subsequently administered consistent with the provisions of the Agreement, and with notice of Mark's and David's intent to appeal the trial court's denial of the Petition to Set Aside pending entry of a final judgment.

On May 28, 2013, Mark and David submitted the Estate's final report and accounting, which the probate court approved on July 3, 2013, and designated as a final judgment pursuant to Trial Rule 54(B).

This appeal ensued.

**Discussion and Decision**

Mark and David appeal the trial court's denial of their motion to set aside the Agreement. They advance two bases upon which they contend the trial court erred. First, they argue, the Agreement should have been set aside under Indiana contract law. Second, they claim that the Agreement should have been set aside under Trial Rule 60(B), which governs the setting aside of judgments under our Trial Rules.

Each approach is based upon the same premise, namely, that the discovery of the 1987 Will several months after the parties' entry into and the trial court's acceptance of the Agreement amounts to a mutual mistake of the parties upon which relief should be granted. And each approach is, at bottom, a matter of equity for the trial court. See Peterson v. First State Bank, 737 N.E.2d 1226, 1230 (Ind. Ct. App. 2000) (observing that reformation of documents is "an extreme equitable remedy" that is "appropriate only in limited circumstances"); Town of St. John v. Home Builders Ass'n of N. Ind., Inc., 428 N.E.2d 1299, 1302 (Ind. Ct. App. 1981) (noting that "relief under T.R. 60(B) is only available where some additional fact is present which leads a trial court to invoke its equitable powers to do justice").

The primary purpose in contract construction is to determine and give effect to the mutual intent of the parties. Bowling v. Poole, 756 N.E.2d 983, 988 (Ind. Ct. App. 2001), trans. denied. When construing a contract, we examine the intent of the parties in drafting the document, which we determine from the parties "written expressions within the four corners of the contract." Id.

6

Yet the doctrine of mutual mistake may permit a party to an agreement to avoid the transaction. "The doctrine of mutual mistake provides that where both parties share a common assumption about a vital fact upon which they based their bargain, and that assumption is false, the transaction may be avoided <u>if because of the mistake a quite different exchange of values occurs from the exchange or values contemplated by the parties</u>." <u>Breeden Revocable Trust v. Hoffmeister-Repp</u>, 941 N.E.2d 1045, 1054 (Ind. Ct. App. 2010) (emphasis added). Mistake about any fact is not enough to set aside the agreement. <u>Id.</u> Rather, the mistaken fact must be "one that is of the essence of the agreement, the <u>sine qua non</u> … such that it animates and controls the conduct of the parties." <u>Id.</u> (citations and quotations omitted). That is, there must be "a mutual mistake of fact between [the parties] that went to the heart of the bargain, to the substance of the whole contract" so that "there was no contract, as a matter of law." <u>Tracy v. Morell</u>, 948 N.E.2d 855, 865 (Ind. Ct. App. 2011).

The trial court found no such mutual mistake here, and we find no error in that result. Mark and David contend that there was a mutual mistake because, had they known of the 1987 Will, they would not have entered into the Agreement, as the 1987 Will was more beneficial to them than the 1992 Will or the Agreement. Nor, they contend, would George and/or his estate have done so, as the 1987 Will would have been far less beneficial to him than either the 1992 Will or the Agreement.

Yet, within its four corners, the Agreement deals not only with the provisions of the 1992 Will as compared to the Agreement, it also provides an express representation for the

7

basis upon which the parties entered into the Agreement, namely, that "[t]he parties hereto intend to compromise and settle all claims, controversies and disputes existing between or among them in any way arising out of or related to the estate of the Decedent." (Appellants' App'x at 27.) That is, the Agreement does not purport to settle a dispute only as to the 1992 Will—it purports to settle <u>all</u> claims of both parties to the Agreement, and includes a representation that the parties "have come to the conclusion that [it] would be in the best interest of all the parties hereto to compromise and settle such controversy, and they desire to compromise and settle the controversy" as provided by the Agreement's terms. (Appellants' App'x at 23-24.)

In light of these representations concerning the parties' intent in entering the Agreement, we cannot conclude that the discovery of the 1987 Will so "went to the heart of the bargain" between the parties as to cause there to be "no contract, as a matter of law." Tracy, 948 N.E.2d at 865. We thus find no error in the probate court's denial of Mark's and David's Petition to Set Aside the Agreement.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.