

**FILED**

Jun 10 2016, 8:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Norman L. Reed | Septtimous Taylor |
| Indianapolis, Indiana | Owensboro, Kentucky |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy A. Williamson, | June 10, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 49A05-1506-MF-521 |
| v. | Appeal from the Marion Superior Court |
| U.S. Bank National Association, | The Honorable Robert R. Altice, Jr., Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 49D05-1405-MF-15742 |

**Pyle, Judge.**

## Statement of the Case

[1] Timothy A. Williamson ("Williamson") appeals the trial court's grant of summary judgment in favor of U.S. Bank National Association ("U.S. Bank") on its mortgage foreclosure complaint. He also appeals the trial court's denial of his motion to strike U.S. Bank's summary judgment reply and second designation of evidence. He argues that the trial court abused its discretion

when it denied his motion to strike because U.S. Bank's reply and second designation of evidence were untimely. As for the trial court's grant of summary judgment on U.S. Bank's mortgage foreclosure complaint, Williamson asserts that there was a mistake of fact when he and U.S. Bank executed the underlying loan agreement and, accordingly, the trial court should have reformed or rescinded the agreement. Alternatively, he argues that the trial court erred in granting summary judgment on the mortgage foreclosure because the bank breached the mortgage agreement first and therefore could not recover under contractual principles.

[2] Because we conclude that: (1) the trial court did not abuse its discretion in denying Williamson's motion to strike because it was untimely; (2) the trial court did not err in granting summary judgment, we affirm the trial court's decision.

[3] We affirm.

## Issues

1. Whether the trial court abused its discretion when it denied Williamson's motion to strike U.S. Bank's summary judgment reply and second designation of evidence.

2. Whether the trial court erred when it granted U.S. Bank's motion for summary judgment on the bank's mortgage foreclosure complaint.

## Facts

[4] On January 13, 2003, Williamson and his then-wife, Colette Williamson (Colette) (collectively, "the Williamsons"), executed a note in the amount of

$71,000.00 payable to Custom Mortgage, Inc. ("Custom Mortgage") and secured the note by executing a mortgage on their residential property ("the Property").[1] They then delivered the note and mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), who was acting as a nominee for Custom Mortgage.[2]

In June 2008, the Williamsons defaulted on their payments under the note and mortgage. On January 6, 2009, Custom Mortgage assigned its rights to the note and mortgage to U.S. Bank, and three days later, U.S. Bank filed a mortgage foreclosure action against the Williamsons.[3] On February 27, 2009, the trial court entered a default judgment against them and concluded that they owed $73,364.50 under the mortgage.[4] The Marion County Sheriff's Department ("Sheriff's Department") scheduled a sheriff's sale of the Property for

---

[1] Williamson and Colette are now divorced. The court entered an *in rem* default judgment against Colette on April 29, 2015. Because she was a party below, she is listed as a party on appeal, but she did not file a separate brief or challenge her default judgment. *See* Ind. Appellate Rule 17(A).

[2] Our supreme court described MERS in detail in *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 809 (Ind. 2012), *reh'g denied*. It explained that: "In the mid-1990s, . . . a consortium of investment banks created [MERS]. MERS maintains 'a computer database designed to track servicing and ownership rights of mortgage loans anywhere in the United States.' MERS member banks list MERS as both 'nominee' for Lender and as 'mortgagee' on their mortgage documents." *Id.* (internal citations omitted).

[3] The assignment that is a part of the record was dated January 27, 2014 and recorded February 10, 2014, not January 6, 2009. However, in its 2009 mortgage foreclosure claim, U.S. Bank asserts that the assignment occurred on January 6, 2009. Although these dates seem incongruent, they are credible within the context of MERS' operational structure. In *Citimortgage, Inc.*, our supreme court explained that "MERS member banks can [] buy and sell [a] note among themselves without recording an assignment of the mortgage. In the event of default, MERS simply assigns the mortgage to whichever member bank currently owns the note, and that bank forecloses on the borrower." *Citimortgage, Inc.*, 975 N.E.2d at 809 (internal citations omitted).

[4] This amount included $66,049.03 in principal; $3,368.51 in interest accrued to February 17, 2009, and interest at a rate of $11.54 per day thereafter; $2,946.96 in costs, expenses, and advances; and $1,000.00 in attorney fees.

September 16, 2009, and U.S. Bank submitted a written bid to buy it at the sale. However, on September 15, the day before the sale, U.S. Bank notified its counsel that it was negotiating a plan with the Williamsons to resolve their mortgage arrearage. Accordingly, U.S. Bank's counsel then sent a notice to the Sheriff's Department requesting it to cancel the sale.

[6] In spite of U.S. Bank's notice, the Sheriff's Department inadvertently held the sheriff's sale the next day, and U.S. Bank's previously submitted bid was the highest bid. As a result, the Sheriff's Department executed a deed for the Property to U.S. Bank and recorded the deed in the Marion County Recorder's Office. U.S. Bank later discovered the mistake and, on December 10, 2009, moved for the trial court to set aside the sheriff's sale and to vacate the sheriff's deed. The trial court granted the motion on December 11, 2009 and ordered the deed vacated.

[7] A year later, on December 20, 2010, the Williamsons and U.S. Bank executed a loan modification agreement ("Modification Agreement") amending the note and mortgage. In the Modification Agreement, the Williamsons agreed to pay $82,261.09 at a yearly rate of four percent, starting December 1, 2010. They then made timely payments from December 2010 until October 2013. However, sometime during that time period, Williamson discovered that his name had previously been removed from the deed to the Property.

[8] In October 2013, a U.S. Bank representative contacted Williamson and informed him that his escrow account was in arrears and that there was not

enough money in the account to pay the property taxes on the Property. Williamson told the representative that he would not pay the arrearage or make any further mortgage payments until U.S. Bank assured him that his name was back on the deed for the home. As a result, on December 19, 2013, the bank submitted an affidavit in aid of title to the Marion County Assessor reaffirming that the court had vacated U.S. Bank's title to the Property and that the title should be restored to Williamson. Nevertheless, Williamson did not make any further mortgage payments.

[9] On February 14, 2014, U.S. Bank notified Williamson that he was again in default on his mortgage, but Williamson continued to miss payments. Accordingly, U.S. Bank filed a complaint requesting to foreclose the mortgage on May 13, 2014. It then filed a motion for summary judgment on September 10, 2014. In its motion, it argued that the trial court should grant summary judgment because no genuine issues of material fact remained regarding whether Williamson had breached the terms of the mortgage.

[10] On December 9, 2014, Williamson filed a response objecting to the bank's motion for summary judgment. Attached to his response, Williamson designated an affidavit in which he averred that he had not known that his name had been taken off of the deed for the Property when he signed the Modification Agreement. He recounted his version of the events preceding his loan default, stating that:

> Shortly after I signed [the] [M]odification [A]greement, [my ex-wife and I] did our taxes for the year and noticed that we had lost

our homestead exemption for our home. Therefore, I contacted U.S. Bank in order to find out what was going on with my homestead exemption. At that time a representative from U.S. Bank informed me that [my and my ex-wife's names] had been taken off of the deed for the home and U.S. Bank's name was now on the deed as the owner. The representative then informed me that I was on an eighteen (18) month probation period and that after eighteen (18) months U.S. Bank would review the account and would put my name back on the Home if all my payments had been made on time.

(Appellant's App. 72). Williamson also claimed in his affidavit that, after this contact with U.S. Bank, he had gone to the Marion County Auditor's Office "on multiple occasions" to file for his homestead exemption and had been denied each time. (Appellant's App. 72).

[11] Based on this designated affidavit, Williamson argued in his summary judgment response that the trial court should not grant summary judgment to U.S. Bank because there were still genuine issues of material fact for the factfinder to resolve, including whether: (1) Williamson would have entered into the Modification Agreement if he had known his name had been taken off of the deed; and (2) U.S. Bank had breached the Modification Agreement first by taking his name off of the deed. He requested that the trial court reform or rescind the Modification Agreement based on his/the parties' mistaken belief(s) that his name was on the deed at the time that they executed the Modification Agreement.

[12] Five months later, on May 14, 2015, U.S. Bank filed a reply to Williamson's response ("Reply") and designated additional evidence ("May 14, 2015

designated evidence"). This additional evidence included, in relevant part, Williamson's deposition transcript and a copy of his mortgage servicing file.

[13] Two weeks later, on May 28, 2015, the trial court held a hearing on U.S. Bank's summary judgment motion. The morning of the hearing, Williamson filed a motion to strike U.S. Bank's Reply and May 14, 2015 designated evidence, arguing that they were untimely and prejudicial. The trial court denied the motion to strike, concluding that it was untimely as Williamson had filed it the same day as the hearing. The trial court then conducted the hearing and granted summary judgment in U.S. Bank's favor. It ordered the mortgage foreclosed and ruled that U.S. Bank could recover, *in rem*:

> the sum of $79,366.67 together with interest at the rate of $8.46 per day from July 11, 2014, to the date of payment, plus any and all advances by [U.S. Bank] for real estate taxes, assessments, insurance premiums, maintenance and costs, escrow fees, and all other advances which [U.S. Bank] must pay to preserve the [Property] and [U.S. Bank's] right therein, incurred during the pendency of this action and costs of this action, plus reasonable attorney fees of $1,500.00, all without relief from valuation and appraisement laws.

(Appellant's App. 8). Williamson now appeals the trial court's denial of his motion to strike and grant of summary judgment in U.S. Bank's favor.

# Decision

[14] On appeal, Williamson raises two arguments: (1) that the trial court abused its discretion when it denied his motion to strike U.S. Bank's Reply and May 14,

2015 designated evidence; and (2) that the trial court erred when it granted U.S. Bank's motion for summary judgment. We will address each of these arguments in turn.

### 1. Motion to Strike

First, Williamson challenges the trial court's denial of his motion to strike. He does not address the trial court's conclusion that the motion was untimely because it was filed the day of the hearing. Instead, he focuses on the merits of the argument he raised in his motion to strike—that U.S. Bank's Reply and May 14, 2015 designated evidence were untimely. We review a decision regarding a motion to strike for an abuse of discretion. *Allstate Ins. Co. v. Hatfield*, 28 N.E.3d 247, 248 (Ind. Ct. App. 2015). We will determine that a trial court has abused its discretion when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

Regardless of the merits of Williamson's argument in his motion to strike, we conclude that the trial court did not abuse its discretion in denying his motion because it was untimely. The sequence of events in this case occurred as follows:

> September 10, 2014 – U.S. Bank filed its motion for summary judgment and its designated evidence.
>
> December 9, 2014 – Williamson filed his response to U.S. Bank's motion for summary judgment and his designated evidence.
>
> May 14, 2015 – U.S. Bank filed its Reply and May 14, 2015 designated evidence.

May 28, 2015 – The trial court held a summary judgment hearing, and Williamson moved to strike U.S. Bank's Reply and May 14, 2015 designated evidence. The trial court denied Williamson's motion.

Williamson filed the motion the day of the summary judgment hearing, which meant that—as the trial court commented at the hearing—neither U.S. Bank nor the trial court had an opportunity to review the motion before the hearing. The trial court also noted that it was reluctant to continue the hearing because it had been set for a long time, and U.S. Bank's counsel had traveled from Kentucky to be there. We have previously noted that the trial court must balance the need for an efficient judicial system with the judicial preference for deciding disputes on the merits. *Munster Cmty. Hosp. v. Bernacke*, 874 N.E.2d 611, 613 (Ind. Ct. App. 2007). In light of these circumstances we conclude that the trial court did not abuse its discretion in determining that Williamson's motion was untimely. Thus, we need not address the substantive merits of his motion to strike.

## 2. Summary Judgment

Next, Williamson argues that the trial court erred when it granted summary judgment in favor of U.S. Bank on its mortgage foreclosure complaint. He contends that a mistake of fact had existed when he and U.S. Bank executed the Modification Agreement because he had believed that his name was on the deed to the Property when it was not. Citing contractual remedies for when there is a mistake of fact in executing a contract, Williamson asserts that he would not have signed the agreement if he had known his name was not on the

deed and that the trial court should have reformed or rescinded the Modification Agreement to reflect that fact. *See Lunsford v. Deutsche Bank Trust Co.*, 996 N.E.2d 815, 822 (Ind. Ct. App. 2013) (noting that loan documents, including a note and mortgage "are contracts and subject to the rules of contract construction"); *Carlson v. Sweeney, Dabagia, Donoghue, Thorne, James & Pagos*, 895 N.E.2d 1191, 1199 (Ind. 2008) (holding that a document may be reformed on grounds of mistake upon clear and convincing evidence of both the mistake and the original intent of the parties), *reh'g denied*; *Norwood v. Erie R. Co.*, 53 N.E.2d 189, 190 (Ind. Ct. App. 1944) (stating that contracts induced by fraud or mistake may be rescinded as voidable). Alternatively, Williamson argues that the trial court should not have granted summary judgment on the mortgage foreclosure because U.S. Bank breached the mortgage agreement first by removing his name from the deed without notifying him.

[18] We review a grant of summary judgment de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). We draw all reasonable inferences in favor of the non-moving party, and we will find summary judgment appropriate if the designated evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences. *Id.*

[19] The initial burden is on the summary judgment movant to demonstrate there is no genuine issue of fact as to a determinative issue, at which point the burden shifts to the non-movant to come forward with evidence showing there is an issue for the trier of fact. *Id.* While the non-moving party has the burden on appeal of persuading us a summary judgment was erroneous, we carefully assess the trial court's decision to ensure the non-movant was not improperly denied his day in court. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial court. *Dickes v. Felger*, 981 N.E.2d 559, 561 (Ind. Ct. App. 2012).

[20] Here, U.S. Bank, the moving party in this summary judgment proceeding, was required to show through its designated evidence that it was entitled to summary judgment on its mortgage foreclosure complaint. The Indiana Code provides that "if a mortgagor defaults in the performance of any condition contained in a mortgage, the mortgagee or the mortgagee's assigns may proceed in the circuit court of the county where the real estate is located to foreclose the equity of redemption contained in the mortgage."[5] I.C. § 32-30-10-3. A "mortgage" is a "loan" or "consumer credit sale" that "is or will be used by the debtor primarily for personal, family, or household purposes and that is secured by a mortgage (or another equivalent consensual security interest) that constitutes a first lien on a dwelling or on a residential real estate upon which a

---

[5] This statute has been amended effective July 1, 2016, but we will apply the version of the statute in effect at the time U.S. Bank filed its complaint.

dwelling is constructed or intended to be constructed." I.C. § 32-30-10.5-5. A party that produces evidence of a demand note and mortgage establishes prima facie evidence supporting a mortgage foreclosure. *See Creech v. LaPorte Prod. Credit Ass'n*, 419 N.E.2d 1008, 1012 (Ind. Ct. App. 1981). Production of this evidence causes the burden to shift to the non-movant to prove payment of the note or any other affirmative defense to the foreclosure. *See id.* ("LPCA entered into evidence the demand note and the mortgage. At that point, LPCA had made a prima facie case. The burden then shifted to the Creechs to show payment of the note, [or] any other affirmative defense.")

[21] Here, U.S. Bank designated its demand note and mortgage as evidence, so the burden switched to Williamson to produce evidence raising a genuine issue of material fact regarding whether he had a valid defense to the foreclosure. *See id.* In his summary judgment response, Williamson did not dispute that he had not paid as required by the Modification Agreement. Instead, he raised the issue of whether his mortgage—the Modification Agreement—was enforceable. It is a well-established principle that "[w]here both parties [to a contract] share a common assumption about a vital fact upon which they based their bargain, and that assumption is false, the transaction may be avoided if because of the mistake a quite different exchange of values occurs from the exchange of values contemplated by the parties." *Tracy v. Morell*, 948 N.E.2d 855, 864 (Ind. Ct. App. 2011). "There is no contract, because the minds of the parties have in fact never met." *Id.* Williamson argues that he should not be held to the terms of the Modification Agreement, and therefore his mortgage should not have been

foreclosed, because he and/or U.S. Bank mistakenly believed the vital fact that his name was on the deed for the Property when they executed the Modification Agreement.

[22] We are not persuaded by Williamson's argument because we conclude that a mistake of fact did not exist when Williamson executed the Modification Agreement as he did have a valid deed to the Property at that time. Deeds to property exist within a "chain of title" that includes records or encumbrances relating to that property. *See Szakaly v. Smith*, 544 N.E.2d 490, 492 (Ind. 1989). There is not one single deed to a property whose name changes according to ownership, as Williamson implies. *See id.* Williamson acknowledges that his deed to the Property was valid and recorded prior to the inadvertent sheriff's sale. He was then divested of ownership of the Property through the sheriff's sale, but the trial court later set aside the sale and vacated the deed resulting from it. *See* Black's Law Dictionary 1782 (10th ed. 2009) (defining "vacate" as "To nullify or cancel; make void"). Accordingly, there was nothing in the chain of title after Williamson's properly recorded deed in the Property to divest him of ownership. The trial court's order setting aside the sheriff's sale and vacating U.S. Bank's deed was issued December 11, 2009—over a year before Williamson and U.S. Bank executed the Modification Agreement on December 20, 2010. Therefore, Williamson did have his name on the deed to the Property

when he executed the agreement, so there was no basis for the trial court to reform or rescind the agreement.[6]

[23] Next, Williamson argues that the trial court should not have granted summary judgment in U.S. Bank's favor because U.S. Bank breached the Modification Agreement first by removing his name from the deed for the Property. It is a general principle that "'[a] party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract.'" *Klepper v. Ace American Ins. Co.*, 999 N.E.2d 86, 96 (Ind. Ct. App. 2013) (quoting *Illiana Surgery & Med. Ctr., LLC v. STG Funding, Inc.*, 824 N.E.2d 388, 403 (Ind. Ct. App. 2005)), *reh'g denied*, *trans. denied.* However, we conclude that U.S. Bank did not breach the Modification Agreement prior to Williamson's non-payment breach. As stated above, the inadvertent sheriff's sale occurred on September 16, 2009, over a year before Williamson and U.S. Bank executed the Modification Agreement on December 20, 2010. U.S. Bank could not have

---

[6] To the extent that Williamson implies that there was no evidence that the trial court's order vacating U.S. Bank's deed was ever recorded, we note that recording a title (or lack of title) does not establish ownership or have any effect on a deed's validity. *See Patterson v. Seavoy*, 822 N.E.2d 206, 211 (Ind. Ct. App. 2005). As we stated in *Patterson*:

> It has long been recognized that the registration of a deed adds nothing to its effectiveness as a conveyance; all that it accomplishes is to impart notice. Indeed, [t]he purpose of the recording statute is to provide protection to subsequent purchasers, lessees, and mortgagees. That is, when multiple parties claim adverse interests in the same land, the date of recording provides a means to determine priority among those claims.

*Id.* (internal citations omitted) (internal quotations omitted) (emphasis omitted).

breached an agreement that did not exist at the time of the alleged breach. Accordingly, we do not find any merit to Williamson's argument that U.S. Bank was guilty of the first material breach by removing his name from the deed.

[24] Since Williamson does not otherwise dispute that he breached the Modification Agreement or that U.S. Bank was entitled to summary judgment on its mortgage foreclosure complaint, we conclude that the trial court did not err in granting summary judgment. There were no genuine issues of material fact remaining for a factfinder to resolve.

[25] Affirmed.

Baker, J., and Bradford, J., concur.